## C. G. DEMENT V. HOUSTON PRINTING CO.

Delivered October 29, 1896.

**Libel—Truth in Justification.**

In an action for libel, where the truth is pleaded in defense, it is not sufficient to show that the charge was in fact made as published, but it must be shown that it was true.

APPEAL from Washington. Tried below before Hon. ED. R. SINKS.

*Beauregard Bryan,* for appellant.

*Searcy & Garrett,* for appellee.

WILLIAMS, ASSOCIATE JUSTICE.—Appellant sued the defendant for damages for publication of an alleged libel consisting of the following statement:

"GIDDINGS, TEXAS, November 21.—C. G. Dement, formerly of Washington County, and who was at one time a Baptist preacher, was jailed last night on the charge of horse stealing. His son-in-law, Joe Holston, was jailed as particeps criminis. The horses alleged to have been stolen were the property of J. C. Hillsman of Ledbetter."

The defendant pleaded the truth of the publication. On the trial the court found that the publication had been made, but that it was true. The findings of the court show, however, that it was true only that plaintiff had been charged with horse theft, and put in jail upon the charge, and not that the charge itself was true. This the court held to establish the truth of the publication and to justify it.

The facts, in brief, were that one Saunders had been a deputy sheriff of Fayette County, and the successor of his principal, the sheriff, had qualified, but Saunders was ignorant of the fact. In company with one Bemshausen, Saunders went into Lee County to plaintiff's home, where Bemshausen identified plaintiff and his son-in-law, Joe Holston, as parties who were supposed to have stolen two horses belonging to one Hillsman. Saunders had no warrant for the arrest of plaintiff, but informed plaintiff that he must arrest him, stating the charge, and

plaintiff, knowing that Saunders had no warrant, consented to go with him to Giddings. At that place plaintiff, over his violent and indignant protest, was confined in jail on the charge thus made against him, and was afterwards released in pursuance to a telegram from LaGrange. It should be stated that, on the 25th day of November, the defendant published the following explanation:

## "ALLEGES CONSPIRACY.

### "REV. DEMENT ARRESTED, BUT NOT WANTED AT GIDDINGS.

"BRENHAM, TEXAS, November 24.—In Thursday's Post appeared the following item from Giddings:

" 'C. G. Dement, formerly of Washington County, and who was at one time a Baptist preacher, was jailed last night on a charge of horse stealing. His son-in-law, Joe Holston, was jailed as particeps criminis. The horses alleged to have been stolen were the property of J. C. Hillman of Ledbetter.'

"Mr. C. G. Dement, the gentleman in question, was seen in this city by the The Post correspondent this morning, in company with Sheriff Teague—but not as a prisoner—on his way to Giddings. He said he felt greatly humiliated by the publication of this item in The Post and in the Brenham Banner, both of which papers circulated at his old home, for the reason that he was innocent, and the victim of what he believed to be a conspiracy to injure him, and Sheriff Teague, as his friend, was then going with him to investigate the matter and sift it to the bottom, with a view to starting suit for damages against the perpetrators of the alleged conspiracy. That he was arrested and jailed at Giddings, he says is true,—a constable from Fayette County did arrest him; and that he was refused bond on the ground that they couldn't take bond when court was in session. And without warrant of arrest or complaint ever having been made, he was ruthlessly arrested, thrown in jail, denied bond when he could have given $10,000 bond in an hour, and restrained of his liberty for forty-two hours, when the La Grange, Fayette County, officials telegraphed that they didn't want him, and he was released. He is indignant and will endeavor to vindicate himself and family name by prosecuting to the fullest extent of the law the parties responsible for his arrest. This is the first time any of the entire Dement family were ever arrested."

The judgment of the lower court is based solely upon its finding that the publication made by defendant was true, and the question thus presented is, whether or not the justification pleaded was sustained by proof that the charge had been in fact made, as published, without proof that the charge was true. The law is clear upon the subject. One who publishes a defamatory statement made by another cannot justify by proving that the other made the statement. By publishing it he becomes responsible for his own act in doing so, and if he seeks to

justify he must prove the truth of the charge published.     Townshend on Libel and Slander, secs. 210, 211, 212; Odgers on Libel and Slander, pp. 161, 164, 172; Cooley on Torts, p. 220.     "The truth, however, which is admitted as a defense, is the truth of the defamatory matter, in substance and in fact, and in the sense in which it was used and was intended to be understood.     If A. says of X. that he is a thief, and C. publishes that A. said X. was a thief, in a certain sense C. would publish the truth, but not in the sense which would constitute a defense. C.'s publication would in fact be but a repetition of A.'s words, which, as we have seen, would not be a defense.     The truth, which, in such case, would amount to a defense, would be that X. was a thief."     Townshend, sec. 211.

Saunders and Bemshausen charged plaintiff with horse theft, and defendant published the charge.     It does not sustain its defense by proving that Saunders and Bemshausen had made the charge, but must show that the charge was true.     It is urged by appellant that the defendant did not even prove that a charge of theft had been made, for, it is said, the language published would naturally imply that a legal accusation by affidavit or otherwise had been made, when such was not the fact; and there is force in the contention.     But a decision of it is unnecessary, in view of the broader proposition laid down.     If a regular affidavit had been made and warrant issued, this would not sustain an allegation of the truth of the publication, under the law as established.     The question would then be presented, whether or not the publication was privileged, but no such question arises here.     In the acts of these parties there was no semblance of a proceeding instituted and conducted in a court of justice.     Cooley on Torts, p. 219; Bishop's Non-Contract Law, sec. 129.

The judgment is erroneous, and it is therefore reversed and the cause remanded.

*Reversed and remanded.*