(84 Misc. Rep. 498)

### SHEPARD v. LAMPHIER.

(Supreme Court, Special Term, Erie County. March 28, 1914.)

1. LIBEL AND SLANDER (§ 7*)—WORDS AND ACTS ACTIONABLE—WORDS IMPUTING IMMORALITY—"A NICE TIME."

A letter from a married man addressed and mailed to a married woman: "Mrs. Shephard: I was very much impressed with your looks, appearance, etc. * * * I am writing this to know if you would meet me at some place where we could talk with each other and make some arrangements where we could get out and have a nice time. I am a married man that you know well, * * * am highly respectable, and no one would think that I would go out for a good time, but I would like to be with you. * * * Now you will say what is there in it for me. Well if you go out with me it will be a good time, pleasant treatment the best I know how, and $5.00 in money and a good true friend in every way one that will never say a word about this in any way"—was not libelous, though it was a proposal for future immoral conduct, yet it charged plaintiff with no improper conduct; there being nothing inconsistent with her absolutely blameless life and conduct in the past, and amounted to no more than an inquiry whether she would consent to the immoral conduct proposed.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 17–78; Dec. Dig. § 7.*]

2. LIBEL AND SLANDER (§ 25*)—WORDS AND ACTS ACTIONABLE—PUBLICATION.

Where a man addressed and mailed a written proposal to a woman for future immoral conduct, and she, by her own act in laying it before the postal authorities, caused it to be made public, there was no publication by defendant.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 107, 108; Dec. Dig. § 25.*]

3. LIBEL AND SLANDER (§ 1*)—MENTAL DISTRESS—PHYSICAL SUFFERING.

An action on the case to recover for the utterance of defamatory words, not actionable in themselves, cannot be sustained by proof of mental distress and physical pain suffered by the complainant as a result thereof.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 1, 10; Dec. Dig. § 1.*]

4. TORTS (§ 8*)—INJURIES.

Where a man, in mailing to a woman a proposal for future immoral conduct, violated the federal statute against mailing obscene matter, and the woman, in instituting prosecution, brought herself into publicity, injuring

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

her reputation, and causing her great mental distress, she had no right of action for the wrong and injury, since the statute conferred no right of action in favor of individuals.

[Ed. Note.—For other cases, see Torts, Cent. Dig. § 8; Dec. Dig. § 8.*]

Action by Flora Shephard against Louis G. Lamphier. Demurrer to the complaint sustained.

Louis L. Thrasher, of Fredonia, and John L. Campbell, of Brocton, in support of demurrer.

Elijah W. Holt, of Buffalo, and Arthur S. Tennant, of Westfield, opposed.

WHEELER, J. [1] The complaint alleges that on the 30th day of August, 1912, the defendant composed, addressed, and mailed to the plaintiff an anonymous letter, of which the following is a copy:

"Mrs. Shepard: I am very much impressed with your looks, appearance, etc. and have been for a long time. I am writing this to know if you would meet me at some place where we could talk with each other and make some arrangements where we could get out and have a nice time. I am a married man that you know well, live in Brocton and highly respectable, and no one would think that I would go out for a good time, but I would like to with you. If you will write me and address the letter to C. A. Bennett Dunkirk, N. Y. Box 71 before next Tuesday as I will be there at noon that day and will get it. I will tell you who I am or will call and see you or write so that we can meet each other for a good time. I am strictly in earnest about this in every way, and anything you may write me will be strictly *confidential* and expect you to treat this the same. Now you will say what is there in it for me. Well if you go out with me it will be a good time, pleasant treatment the best I know how, and $5.00 in money and a good true friend in every way one that will never say a word about this in any way. Kindly ans. this so that we may be able to get together and talk things over and have a good time I will not sign this but will come and see you or write you all of it after I hear from you."

It is further alleged: That in and by this letter the defendant maliciously and wrongfully stated and imputed that the plaintiff was a woman of loose and immoral character and reputation, and one who would willingly consort and cohabit with the defendant in an immoral manner for gain, and of such low and degraded nature as to be without moral principles, and would therefore engage in illicit relations with the defendant. That the use of the mails for the transmission of said letter was a crime and a penal offense against the statutes of the United States. That the defendant well knew that the mailing of said letter would be, or was likely to be, investigated by the postal authorities, and that, in the event of such an investigation, said letter would come to the knowledge of public officials and others persons, so that a publication would thereby become inevitable. That the offense was investigated by said authorities, and "said letter thereby came lawfully in the possession of the public officers, whose duty it was to procure the same, and was thereafter presented to the federal grand jury, and an indictment was by said grand jury presented against the defendant," which indictment thereby became a public document. That plaintiff was compelled to appear before said grand jury as a witness and tes-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tify she was the person to whom the letter was addressed, by reason whereof the letter came to the knowledge of many persons, and the *"letter thereby became published, within the meaning of the term as applied to libels."*

The complaint further alleges that the complaint came to the possession of the United States Attorneys Department, and that the letter was presented by the agents of said department, in company with one James Douglas, to said defendant, and he then and there stated to said persons that he had written said letter to and concerning the plaintiff, and that, by reason of said acts of the defendant, the plaintiff had been injured in her good name and reputation, and had suffered great mental distress.

A second count in the complaint alleges injury to her bodily health and business by reason of the facts above set forth.

The defendant demurs to the plaintiff's complaint, contending: First. That the letter is insufficient to sustain a charge of either libel or slander. Second. There was no publication alleged in the first count of the complaint. Third. That the second count of the complaint does not state a cause of action for the reason that the words charged are not libelous per se, and no special damage is alleged.

It is argued that the letter cannot be considered, by any legitimate innuendo, to mean a proposal to meet for purposes of improper relations. That the words a "nice time" should be given an innocent meaning rather than one suggesting a guilty laison. In this view we cannot concur. The letter, taken as a whole, seems fairly susceptible of no other construction than an invitation to meet for immoral and criminal purposes. The question, however, still remains whether a proposal of this character from one to another can be classed as either a libel or a slander.

When we study the letter, we see that it charges the plaintiff with the commission of no offense or improper conduct. It is merely a proposal for the future conduct of both parties. There is nothing in the letter inconsistent with the absolutely blameless life and conduct of the plaintiff in the past. Can a written proposal looking to future immoral conduct, by any fair construction, be deemed a libel or slander on the character of the person to whom it is addressed? It is, in substance, nothing more or less than an inquiry as to whether the plaintiff *will* consent to the immoral relationship proposed. It contains no reflection on the propriety of her past life and conduct. It is true that it involves, to a degree, a thought or opinion on the part of the writer of the letter of the possibility that the person addressed may entertain the proposition made, and that her character is such that she would not spurn the suggestions made. However much such propositions are to be condemned, can it be said that such a letter can be termed a libel in any proper sense? The use of the mails for any such purpose has been held a penal offense, under the statutes of the United States. Such a letter was an outrage upon the plaintiff. The defendant should be severely punished for such conduct, but we are unable to discover that the writing and sending of such a communication fall within the category of libels. We have searched the books and run down the deci-

sions in vain, in an effort to find some case which would justify this court in holding that the making of a mere proposition even to commit crime can be construed into a libel. It is barely possible, under certain circumstances, the publication of such a letter might be converted into a libel, but I am unable to discover how, when sent direct to the person addressed, and where marked and intended as a confidential communication, it can be given such a construction.

The complaint, by many allegations of conclusion of intent, purpose, and innuendo, seeks to spell out from the letter a charge of immorality against the plaintiff, but "words alleged to be libelous are to be taken in the sense that is most natural and obvious, and their meaning cannot be extended by innuendo beyond what is justified by the words themselves." Sanderson v. Caldwell, 45 N. Y. 398, 6 Am. Rep. 105; Woodruff v. Bradstreet, 116 N. Y. 217, 22 N. E. 354, 5 L. R. A. 555; ·Verbeck v. Duryea, 36 Misc. Rep. 242, 73 N. Y. Supp. 346.

[2] It is urged there was no publication of the libel, if one. The complaint is silent as to how, and by what means, the letter complained of reached the knowledge of the postal authorities. The pleader has evidently studiously avoided any statement as to the facts in that regard. The presumption is that, having been deposited in the mails, it reached the plaintiff's hands in due course. If the letter was made known to others, it must have been disclosed by the plaintiff herself. Certainly there is nothing in the complaint rebutting that presumption.

It is unquestionably the law that there is no publication of a libel until it has been communicated to some third person or to the public generally, and, where such a publication is the act of the person claimed to have been injured, he cannot complain of injuries caused by his own act in making the libel public. Woodman v. Kidd, 25 App. Div. 254, 49 N. Y. Supp. 301; Galligan v. Kelly, 31 N. Y. Supp. 561; Owen v. Ogilvie Co., 32 App. Div. 465, 53 N. Y. Supp. 1033; Youmans v. Smith, 153 N. Y. 214, 47 N. E. 265.

The fact undoubtedly is that the plaintiff herself laid the letter before the postal authorities, and by reason of her own complaint caused the letter to be made public. In this course she is to be highly commended. If this be true, she took a course which, as a good citizen, she owed to the public and to herself. At the same time it cannot be said the defendant caused the publication of the letter in question. The gravamen of all actions of this character is injury and loss to reputation. Injury to reputation, of course, necessarily involves the making of the matter public, and, if that comes through the act of the party claimed to have been libeled, the injury to reputation cannot be legally imputed to the other party.

[3] It is contended, however, that, aside from the question whether the letter complained of is to be deemed a libel, the plaintiff is entitled to recover upon the theory that the law will support a recovery in what is known as an action on the case.

The argument made is: That the defendant was guilty of a grave and serious offense against the plaintiff. That of necessity the receipt of such a letter would cause feelings of righteous indignation, and humiliation on the part of the plaintiff, and unavoidably cause mental

suffering. That the defendant was guilty of a criminal offense against the United States statutes, and the plaintiff owed a duty toward herself and the public to see the offender was duly prosecuted. That she could not, in justice to herself or to the public, keep silence, and that, in acting in compliance with this duty, she should not be held responsible for the consequences to herself or her reputation by instituting a criminal prosecution of the defendant, even though it involved a publication of the letter complained of.

It is urged that it is a recognized rule of law that for every wrong the law gives a remedy, and that the circumstances of this case ought and should give the plaintiff a right of action for the wrong done. It certainly is no answer to the argument made that no precedent is to be found for maintaining an action of just the character of this. The law is jealous in finding adequate remedies and giving suitable relief in proper cases. We cannot, however, depart from well-established rules of law, or well-recognized policies, simply for the purpose of righting a wrong in some particular case.

It is well established in this state that an action to recover for the utterance of defamatory words, not actionable in themselves, cannot be sustained by proof of mental distress and physical pain suffered by the complainant as a result thereof. Garrison v. Sun Printing & Pub. Co., 207 N. Y. 1, 100 N. E. 430, 45 L. R. A. (N. S.) 766. So it has been held that, in an action for negligence, a plaintiff may not recover for physical sufferings, as a miscarriage, resulting purely from fright, where there was no physical injury; that to allow a recovery in such a case would be to recognize damages which are not natural and ordinary. Mitchell v. Rochester Ry. Co., 151 N. Y. 107, 110, 45 N. E. 354, 34 L. R. A. 781, 56 Am. St. Rep. 604; Hack v. Dady, 134 App. Div. 253, 118 N. Y. Supp. 906. See, also, Terwilliger v. Wanda, 17 N. Y. 54, 72 Am. Dec. 420; Wilson v. Goit, 17 N. Y. 442.

[4] It is true that the defendant violated the federal statute against mailing obscene matter when he sent the letter to the plaintiff, but the violation of the statute does not confer a right of action, nor can the institution of a prosecution for the offense do so, or the consequences which flow from it.

Judge Cooley, in his admirable work on Torts, vol. 1, p. 25, speaking of the doctrine that the law will give redress as a rule where a right has been invaded, said:

"To what is here said there are apparent exceptions. These statutes, in many cases, forbid, under penalties payable to the state, the doing of certain acts that might be injurious to individuals, or, under like penalties, require certain acts to be done, the doing of which will be beneficial to individuals. In these cases, if it is manifest from the statute that the penalty is the only injurious consequence that is to be incurred by a violation of the law, it may be said that the individual has a right, and yet the law affords him no remedy for its infringement. Put in a strict legal sense, the statute in such cases is to be regarded as prescribing duties on public grounds only, and the party who suffers from a failure to observe them only chances to be the individual upon whom falls the consequences of a wrong done to the public."

It would, in our opinion, be pressing the doctrine too far to hold that the moral duty to make criminal complaint for a violation of a statute,

simply because the complaint involved unpleasant consequences to the complainant, for that reason conferred a right of action for the act justifying a prosecution. On grounds of public policy, we do not think the courts should go to the extent insisted on.

We have reached the conclusion, with no little regret, that the demurrer should be sustained.

So ordered, without costs of this demurrer, and with leave to the plaintiff to serve an amended complaint within 20 days after service of the interlocutory decree sustaining demurrer.