## FERGUSON v. HOUSTON PRESS CO.*
### (No. 3443.)

Court of Civil Appeals of Texas.　Texarkana.
Nov. 24, 1927.

Rehearing Denied Dec. 8, 1927.

**1. Libel and slander ⬅═123(1)—Disputed issues of fact are for determination of jury.**

In libel action, disputed issues of fact are within province of jury for determination.

**2. Libel and slander ⬅═10(3)—Publication that tax collector was perhaps highest paid public official in Texas, though not most efficient, held not insinuation of his receiving more pay than efficiency justified.**

Publication, in editorial of newspaper, that plaintiff tax collector was perhaps highest paid official in Texas, although certainly not the most efficient, was, when considering article in entirety, comment on laws allowing fees as compensation, and did not have gratuitous personal insinuation of plaintiff's receiving more pay than his efficiency justified, although innuendo conveyed natural meaning that he was not so efficient as most efficient.

**3. Libel and slander ⬅═48(2)—Newspaper may comment on state laws, although practical operation of law bearing on different public officials may be compared.**

It is not legally objectionable of publication to comment or make exposition of state laws, although operation of law bearing on different public officials may be expressed and compared.

**4. Libel and slander ⬅═48(2)—Unless criticism of public official be ground for removal from office, it is not actionable per se as being without privilege.**

Criticism of tax collector that, while he was the highest paid public official in Texas, he was not the most efficient, was not of a nature sufficient to afford ground for his removal from office, and therefore was not actionable per se as being without scope of privileged matter.

**5. Libel and slander ⬅═118—Mere injury to feelings as of pride in efficiency in public office is not basis in action for special damages.**

In action by tax collector against newspaper for defamatory publication, that tax collector was highest paid public official in Texas, although not most efficient, mere injury to plaintiff's feelings from his pride of efficiency in office did not constitute basis of action for special damages.

**6. Libel and slander ⬅═10(3)—Publication of article beginning, "Let's not be too harsh with" tax collector, held not defamatory.**

Editorial in newspaper, "Let's not be too harsh with" county tax collector, which consti-

tuted criticism of Ku Klux Klan so far as it pertained to political activity, held not to have defamatory effect on county tax collector.

**7. Libel and slander ⬅═10(3)—Publication that tax collector had been violating law held to impute mere deviation from or misapprehension of law, and not actionable.**

Publication in newspaper, under headline that county tax collector violates law because county auditor's record showed that legal regulations were not carried out in handling county funds, held to reasonably imply, without imputing corruptness, tax collector's mere deviation from or misapprehension of law, and not without scope of privileged publication or of justification if true.

**8. Libel and slander ⬅═54—Publication that tax collector violated law held not actionable, in view of his testimony that he had not lived up to law.**

Publication in newspaper that county tax collector violated law because records of county auditor showed legal regulations had not been carried in handling county funds was not actionable, in view of tax collector's admission in testimony that he had not been living up to the law.

**9. Libel and slander ⬅═48(2)—Publication that county tax collector had been warned that ouster proceedings would be instituted unless department delays ceased held privileged publication.**

Newspaper article that county tax collector had been warned by county officials that ouster proceedings would be instituted unless delays in his department ceased, and that grand jury was investigating conditions in his office, held within limit of privileged publication, since there was no attempt to go beyond subject-matter of legal proceedings and official reports or to imply dishonesty or corruptness.

**10. Libel and slander ⬅═48(2)—Published comment that tax collector had made mistakes and failed to file reports without penalty held privileged publication unless untrue.**

Publication in newspaper that most significant thing about tax collector's office was that he made mistakes and failed to file reports without being penalized was not without subject-matter of privileged publication under statute unless statements therein were untrue.

**11. Libel and slander ⬅═42(1)—Editorial comment on grand jury report as to tax collector's conduct of office, justified by proven facts, was not actionable.**

Editorial in newspaper, commenting on grand jury report relating to tax collector, with imputation that he was not conducting affairs of his office in accordance with strict business plan, being true and justified by facts conclusively proven, was not actionable.

**12. Libel and slander ⬅═10(3)—Publication under headline, Tax Collector "Short $1,600, Criminal Intent not Found," held not actionable as imputing criminality.**

Publication in newspaper under headline, "F. [Tax Collector] Short $1,600, Criminal Intent not Found," which was followed by com-

plete copy of grand jury's report, *held* not actionable as imputing criminality, and, in view of plaintiff's testimony, it could be regarded as truthful.

**13. Libel and slander ⊕123(7)—Whether publication as to errors in tax collector's annual report was justifiable held for jury (Rev. St. 1925, art. 5972).**

Where publication in special columns of newspaper addressed to tax collector, asking, If it were private concern he worked for and made errors of $23,397 one year and $13,243 next year in his annual reports, "where do you think you would land?" was statement on face evidencing facts of gross carelessness, which, under Rev. St. 1925, art. 5972, was cause for removal from office, since it referred to errors in the annual report of the collector, prepared under articles 7260–7263 as checked up by the county auditor with lists prepared by tax assessors under article 7219, whether there was justification for imputation of tax collector's carelessness and incompetency *held* under evidence, for jury.

**14. Libel and slander ⊕54—Innuendo may be justified by facts on face of article if true.**

In tax collector's action against newspaper for publication of defamatory article, innuendo of publication may be justified by facts on face of the article if true.

**15. Libel and slander ⊕100(8)—Evidence In justification, to be complete defense, must be coextensive with specific charge made.**

In action for libel, evidence in justification, in order to be a complete defense, must be coextensive with specific charge made.

**16. Libel and slander ⊕123(7)—Weight and sufficiency of evidence as to truth of defamatory charge is fact question for jury.**

While proof of substance of defamatory charge may be sufficient as justification, weight and sufficiency as to truth is question of fact for jury.

**17. Libel and slander ⊕123(7)—Truth of charge that tax collector had method of beating nepotism law held for jury (Pen. Code 1925, art. 434).**

Where newspaper editorial charged that Klansmen around courthouse had way of beating nepotism law (Pen. Code 1925, art. 434), prohibiting office holders from appointing certain relatives as clerks, and that tax collector and others made pool, and one employed relative of another and vice versa, whether truth of charge thereof was established in tax collector's action against newspaper *held*, under evidence, for jury.

**18. Libel and slander ⊕112(3)—Evidence of suspicious circumstances is insufficient to establish justification charged.**

Where plaintiff alleged newspaper article that he and other public officials pooled together to defeat the nepotism law was defamatory. it is not sufficient, in order to decide the question of truth of offense charged as a pure matter of law, that evidence establishes existence of suspicious circumstances of element that made up the offense charged.

**19. Libel and slander ⊕48(1)—Privilege of discussing matter of public interests does not extend to making of false statements of fact.**

Privilege of discussing matters of public concern and in public interest does not extend to making of false statements of fact, even though made in good faith and with reasonable cause to believe it true.

Appeal from District Court, Harris County; W. E. Monteith, Judge.

Action by C. Bruce Ferguson against the Houston Press Company. From a judgment for defendant, plaintiff appeals. Reversed and remanded.

R. L. Henry, of Houston, for appellant.

Fulbright, Crooker & Freeman, of Houston, for appellee.

LEVY, J. The appellant brought suit for damages suffered by reason of alleged defamation by publications in regard to him in the Houston Press, a daily newspaper. The appellee pleaded, as a defense, that the publications complained of were true, privileged matters, and published without malice. After hearing the evidence, the court concluded that the matters of defense were conclusively proven, and peremptorily instructed the jury to return a verdict in favor of the appellee. The appeal is to reverse the ruling made by the court.

[1] The simple question on appeal is that of whether or not the evidence raised a disputed issue of fact such as should have been submitted to the jury for determination, as in their province to do. The determination of the question requires an examination of alleged defamations and of the evidence, but a brief statement thereof will suffice, in view of the voluminous record.

The appellee was the duly elected tax collector of Harris county, and was a candidate for nomination to that office in the party primary election in July, 1924, but was defeated. The Houston Press is a daily newspaper published and circulated in Houston, Tex. The alleged and proven nine various publications in regard to appellant appeared in successive editions of the paper, and are, in substance, as herein stated.

[2-5] First article: This article is an editorial of date April 12, 1924, the first paragraph reading as follows:

"Our tax collector is perhaps the highest paid public official in Texas, although certainly not the most efficient."

In the several paragraphs following is stated the amount of salary and fees allowable annually to the tax collector "of $14,000," to the district attorney "of about $12,000," and "to other county officials" of "$10,000 or more," and comparison of all such amounts is made with the salary "of the Governor of Texas" of "$4,000," charging such amount of

compensation to the tax collector and other county officials to be on account of the "fee system which we haven't been able to get rid of," and explaining the prolific source of fees to be from the "new poll tax law" and "delinquent tax law." Considered in entirety, the article, in mode of expression and meaning, was merely a comment upon or exposition of the laws of the state allowing fees as compensation, as applicable to Harris county officials, especially the tax collector. It is not at all legally objectionable of publication, as a matter of public information or concern, to merely comment or make exposition of the laws of the state, although the practical operation of the law bearing upon different public officials may be expressed and compared. And, considering the beginning paragraph of the article by itself, it affirmed that, "although certainly not the most efficient official in Texas," yet appellant "was (meaning under existing laws) perhaps the highest paid one." Such statement does, as is manifest, have a gratuitous personal insinuation of appellant's receiving more pay than his degree of efficiency justified; yet the innuendo goes no further than to make comparison of the degree of efficiency of appellant, conveying the natural meaning that he was a person or officer not so efficient as the "most efficient." There is no imputation of dishonor, lack of integrity, unworthiness, or misconduct in office in such disparagement or comparison. The statement could be literally true that appellant was "certainly not the most efficient public official in Texas," and still he would legally suffer no pecuniary injury from such ascription. It is not of a nature sufficiently grave to afford ground for removal from office; and, unless it be legal ground for removal from office, a criticism of that nature is not actionable per se as being without the scope of privileged matter. Cotulla v. Kerr, 74 Tex. 89, 11 S. W. 1058, 15 Am. St. Rep. 819; Webster v. Nunn (Tex. Civ. App.) 248 S. W. 711. Mere injury to feelings alone, as of pride of efficiency in office, will not constitute the basis of an action for special damages. Shepard v. Lamphier, 84 Misc. Rep. 498, 146 N. Y. S. 745; Printing Co. v. Nethersole, 84 Ohio St. 118, 95 N. E. 735, Ann. Cas. 1912B, 978. Appellant's own evidence removes any doubt about the facts stated in the article. He testified:

"I received in 1924 about $14,500 in fees of office. * * * I do not claim that part of the article with reference to my not being the most efficient officer in Texas is untrue. * * * That whole article is substantially true and correct."

[6] Second article: This article is an editorial of date June 11, 1924, which begins as follows:

"Let's not be too harsh with Bruce Ferguson, county tax collector," etc.

The intendment of the entire article was a criticism of the Ku Klux Klan so far as pertains to political activity, generally of the "glaring evil of choosing men, not on merits, but because they wear a certain badge." It was alleged in the petition that this article meant to charge and impute lack of efficiency in appellant to hold the office of tax collector. But the brief does not deal with the article nor refer to any statement tending to show an untrue comment upon appellant. So far as the article directly referred to appellant, the language on its face does not have a defamatory effect in the characterizing circumstances, and the facts otherwise applied were proven substantially true without dispute.

[7, 8] Third article: This article is of date June 10, 1924, under the headline, "County Tax Collector Violates Law." The article then begins as follows:

"C. B. Ferguson has been violating the law. Records in the office of County Auditor Washburn show that legal regulations have not been carried out in the handling of more than $1,500,-000 in county funds. Although penalties are provided for failure on the part of the collector to make reports promptly, Ferguson is being permitted to further delay his reports on the plea that he has not sufficient deputies to do the work. No legal action is being taken against him or has been taken."

In the paragraphs following are set out the particular statutory regulations violated. The words of the headline are general in their nature, of a deviation from the law as applicable to the county tax collector. And, considering the body of the article in connection with the headline (Webster v. Nunn [Tex. Civ. App.] 248 S. W. 711), there is affirmative explanation that the violation of law on appellant's part consisted in the delay and failure, and no further, to make out and file timely monthly and annual statements upon the dates prescribed by the statutes, subjecting him to a penalty therefor. It affirmatively discloses appellant's "plea that he has not sufficient deputies to do the work." It reasonably implies, without imputing corruptness, merely a deviation from or misapprehension of the law. The article may not be regarded as without the scope of privileged matter of publication, and of justification, if true. Every element of the offense necessary to criminal conviction, as imputed, was proven. All doubt is removed of the truth of the publication by the appellant's admission. He testified:

"I had not been living up to the law. There is a penalty provided by law for failure to make reports promptly on the dates specified in the law. The law does require reports to be made on a certain date. I did not make my reports by the date required by law to be made. They were not made the next day. I think, however, most of them were made the next week. The annual statement was not made up by me at the time required by law, nor anywhere near it. * * *

I didn't have deputies enough to get them out in time."

After examination of appellant with reference to the whole article, he testified:

"It is a fact that three of the paragraphs of that article are a hundred per cent. correct, and the other one is substantially correct."

[9] Fourth article: This article is of date June 11, 1924, under the headline, "Ferguson is Warned." The body of the article begins with the paragraph:

"County Tax Collector C. B. Ferguson has been warned by county officials that ouster proceedings will be brought against him unless delays in his department cease, it became known Wednesday. At the same time the grand jury is investigating conditions in Ferguson's office."

It then continues at considerable length to set out "the things found out by Press investigators," purporting to be matters contained in official records and reports. The words of the headline are not upon their face of injurious character in their usual and natural signification, but only in consequence of extrinsic facts. And the headline is justified by the body of the article itself. As an entirety the article purports to be a statement of official proceedings, records, and documents concerning the official acts of the tax collector pertaining to the discharge of his duties of office. In view of the evidence in the record, it is thought that there cannot reasonably be predicated a finding of unfair or unjust and untrue criticism or comment without the limits of a privileged publication, in that there is no attempt in the article to go beyond the subject-matter of the legal proceedings and official reports and documents, or in any wise implying dishonesty or corruptness. There is no pretense of evidence tending to impeach the official proceedings, reports, and documents. Also the defense of truth was complete. Any imputation or inference naturally arising, if any, was justified by the proven truth of the published statements. A jury question did not arise in that respect.

[10] Fifth article: This article is an editorial of date June 12, 1924, reading:

"The most significant thing about the manner in which our county tax collector conducts his office is that he has been making mistakes and failing to file reports for months without being penalized.

"County Auditor Washburn's records indicate that he has repeatedly called this to the attention of county commissioners' court. The court has done nothing except call Ferguson 'on the carpet' a couple of times. But what can you expect when the tax collector and the commissioners are all Klansmen?"

The article mainly purports to be a criticism of official acts of public officials, bearing directly on appellant as tax collector. Although the comment as a whole may not be regarded as free from the inference of dereliction of performance of duties, yet as matters of public concern the comments are not without the subject-matter of privileged publication under the statute, unless the statements be untrue. In no wise do the briefs undertake to point out or refer to any evidence tending to show the untruth of the facts stated in the comments. The evidence, as we find the record, admittedly establishes the truth of the facts stated in the comments, conclusively warranting the imputation of official misconduct and justifying the publication.

[11] Sixth article: This article, of date June 27, 1924, is editorial comment upon the grand jury report relating to appellant, with imputation by equivocal expressions, although moderate, that appellant was not conducting the affairs of his office in accordance with a strictly business plan. The innuendo is justified by the facts conclusively proven as true.

[12] Seventh article: This article is of date June 26, 1924, under the headline:

"Ferguson Short $1,600.
"Criminal Intent not Found.
"Case therefore not Pressed Further.
"Promises to Pay.
"No Conspiracy against Him He Admits."

In this connection it was stated, "The grand jury's report follows," a complete copy of which was set out. The word "short" appearing in the headline may be understood, though not unequivocally so, as imputing crime, importing guilt of an offense. But, considering the further words of the headline, "Criminal Intent not Found," the headline in its entirety may, in the usual and natural construction, be understood in a sense as not imputing criminality. There is no affirmative statement that appellant was guilty of a crime, especially so in view of the grand jury report published in full. This report states:

"(2) We find that the sums of money claimed by the auditor to be due to the county, state navigation district, and officers were collected by the collector in June and September, 1923, in the manner and on the dates alleged by the auditor, and amount, with interest, to substantially the sum of $1,600, and that same has never been paid over. Mr. Ferguson has assured us that this amount will be paid into the proper channels during the day. * * * We state that we have not been able to convince ourselves of any criminal intent on the part of Mr. Ferguson in connection with the amounts claimed to be due the state and county. And, in view of the payments of this amount and the assurance of Mr. Ferguson that his reports will hereafter be made out and filed with the auditor and the court in accordance with the law, we have decided to proceed no further than to make our findings as a matter of official report to your honor."

It was admitted that the published report was a true copy of the grand jury report re-

turned and filed in the criminal district court on June 26, 1924. Appellant admitted that $1,591.50, with interest thereon, amounting to $1,600 or more, was the true amount. It is sufficient to quote the following from appellant's testimony:

"My total indebtedness (of taxes collected) at that time, which I had collected from ten months to a year prior to my payment, was approximately $1,622, which money I had had for practically a year in one instance, and ten months in another instance, before I paid it in; and I had not reported its collection. * * * I did not have the cash in the bank. I had not paid the amount into the county, navigation district, or governmental subdivision of the county, who were entitled to receive that money. * * * There were occasions from time to time when I loaned individuals in my employ, or rather let them draw out of the funds and put a duebill in the drawer. I think the due-bills amounted to something in the neighborhood of $1,600. During all the time of the ten months' interval there was approximately $1,600 worth of duebills in the drawer in lieu of the actual cash. Maybe five or six hundred dollars out of the $1,600 was, of course, due to me. That was the situation at the time of the grand jury investigation. Those duebills were all before the grand jury. * * * I did not really know to what fund the money belonged, and I was keeping it because we did not know to what fund it belonged and until we did know. * * * I merely permitted the withdrawal of that cash on duebills of employees, keeping the duebills in the drawer. * * * I paid the actual money, on my monthly report, after grand jury report."

Consequently the headlines may be regarded as indicating a truthful report. The imputation that an official is "short," meaning without "criminal intent," is justified by the fact that he was inexcusably in arrears for some extended period of time in accounting for and paying over taxes collected, permitting employees to use same on duebills. Such official is legally bound to timely report and account for taxes collected, and untimely failure to do so constitutes delinquency in payment.

[13-16] Eighth article: This article is of date April 12, 1924. It appeared in what is called the "Sam Houston column" of the paper. It reads, in entirety, as follows:

"To Tax Collector Bruce Ferguson: If it were a private concern you were working for and made errors of $23,397 one year and $13,-243 the next year in your annual reports, where do you think you would land? Sam Houston."

Other articles followed in the same column, but relating to other people, and are illustrative of the Sam Houston column. The Sam Houston column appeared only in every Saturday issue of the paper. The first two of them read as follows:

"To Houston Firemen: You certainly have been earning all the money the city pays you during the last few weeks. Sam Houston.

"To County Auditor Washburn: Your recommendation of the civil service for county employees to keep efficient employees on the job is a good one. In fact, your whole report is an excellent one. Sam Houston."

The language of the article is unambiguous, and in effect is an assertion that the two successive annual reports made out by appellant contained errors of a nature sufficiently serious to cause a "private concern" to "land" or discharge him therefor. It implies, without imputing corruptness, incompetency, or constant gross carelessness in the discharge of official duties. The statement on its face evidences facts of gross carelessness, if not incompetency. This would be cause, if true, for his removal from office (article 5972, R. S. [1925]), and consequently the comment is defamatory in nature, according to the cases supra. The innuendo may be justified by the facts on the face of the article, if true. It appears that the appellee's reporter was furnished the county auditor's report of the Financial Affairs of Harris County for the year 1923, page 11 thereof reading:

"Errors: On the county tax rolls alone errors were shown amounting to $23,379.79 for the year 1921, and $13,248.61 for the year 1922, for various reasons. Comment on those would seem unnecessary."

Taking such report as the basis, the article in question was written and published as the tax collector's "annual reports," showing such "errors" in the amounts stated. That was the mistake of fact made. The tax collector does not prepare and make up the "county tax rolls." Article 7219, R. S. He does make out "annual reports." Articles 7260–7263, R. S. After the collector makes up and prepares his annual report, it is submitted to the county auditor to check with the tax rolls and tax receipts and what is termed in the evidence the "error list," which latter is the record of authorization on the part of the commissioners' court. And the matter of controversy in the evidence must be considered respecting "the errors" made in the "annual reports" of the tax collector as checked up by the county auditor. Considering the evidence in its entirety, it is believed that it may not be determined that the imputation of constant gross carelessness or incompetency of appellant as an official was justified under the facts proven, as a pure matter of law, respecting his "annual reports." The evidence in justification, in order to be a complete defense, must be coextensive with the specific charge laid. Cotulla v. Kerr, supra. The original "tax rolls" and the "annual accounts" are distinct as to subject-matter directly chargeable to the tax collector, and for which he would be responsible. The inferences allowable from the evidence as to mistakes and how they came about in the "annual account" are for the jury in the first instance, as in their power to determine.

While proof of the substance of the defamatory charge may be sufficient as a justification, the weight and sufficiency as to the truth became questions of fact for the jury, in view of the evidence.

[17] Ninth article: This article, of date June 28, 1924, is an editorial, reading:

"A number of the Klansmen around the courthouse have a way of beating the nepotism law. The law forbids the employment by an official of any near relative. But Ben Witt, tax assessor, Albert Townsend, county clerk, and Bruce Ferguson, tax collector, aren't bothered by a law like that. They just make a little pool, and one employs the relatives of another, and vice versa. They just swap back and forth. That puts them beyond the reach of the law. But they are in fact violating the very spirit of the law. Isn't a public official who uses a device to side-step the wording of the law, but who tramples on the spirit and purposes of the law, as culpable as one who commits a straight-out violation of the law? The employment of relatives of office holders in Texas was so fraught with evils that the nepotism law was passed. There were some definite reasons for its passage. But these Klan officeholders are ignoring all those reasons. They are ignoring everything except the words of the law, and escaping its penalties. What have Witt, Townsend, Ferguson, and Judge Bryan of the county court to say for themselves? Come on, now, and tell us just how you excuse and condone this action. Good Klansmen should always be ready with an excuse for most anything."

The complaint made of the article is that it charges the appellant with evading the statutory nepotism law, an indictable offense. It plainly does have that effect, notwithstanding the article undertakes to explain the facts stated as "violating the spirit" but not "the words of the law." 36 C. J. 21, p. 1155. It was stated as a pure fact, and not in the form of mere comment, that "they (including appellant) just make a little pool, and one employs the relatives of another, and vice versa. They just swap back and forth." The statement preceding was that "the law forbids the employment by an official of any near relative. But Ben Witt, tax assessor, Albert Townsend, county clerk, and Bruce Ferguson, tax collector, aren't bothered by a law like that." That implies mutual agreement or trading between such officials to appoint the relatives of each other to a clerkship. Every element of the offense necessary to a criminal conviction was stated. The Penal Code (1925) art. 434, provides:

"No officer * * * shall appoint * * * to any * * * position" or "clerkship, * * * any person whose services are to be rendered under his direction or control and to be paid for, directly or indirectly out of any such public funds or fees of office, and who is related by affinity within the second degree or by consanguinity within the third degree to any such officer or person included within any provision of this law, in consideration, in whole or in part, that such * * * officer or person has there-tofore appointed * * * or will thereafter appoint * * * to any such position, or clerkship, * * * any person whomsoever related within the second degree by affinity or within the third degree by consanguinity to such officer or * * * person making such appointment."

The term "in consideration that" points to words of contract, the price of a promise, prompting the actors to carry out the agreement. The punishment is by fine "not less than one hundred dollars nor more than one thousand dollars." The appellant testified:

"I know there is a nepotism law. I understand that law forbids me hiring my brother, cousin, sister-in-law, or any near relative in a public office. D. D. Townsend, brother of Albert Townsend (county clerk), worked for me. I knew Albert Townsend could not employ his own brother to work in the county clerk's office under him. My brother, Will Ferguson, formerly worked for Townsend. Of course I could not employ him myself. Ben F. Witt, brother of Fred W. Witt (county tax assessor), was working in my office. Of course Mr. Witt could not hire his own brother. Lawrence Forney, my son-in-law, was working for Fred W. Witt. Of course I could not employ him. L. Graham, son of Tom Graham (criminal district clerk), was working for County Clerk Townsend. * * * My contention about the article is that I did not make any agreement or trade with anybody that if he would employ my brother or son I would employ his brother. There never was a pool between me and other officials that we would reciprocate in the way charged in that article. I never did meet with the other officials for the purpose of entering into an agreement of that sort. There never was any concert of action by agreement or otherwise. There never was a word spoken about the matter. The brother of the assessor and the brother of County Clerk Townsend were in my department. I was absolutely not trying to violate the nepotism law when I did that. Both of these individuals I had employed were exceptionally good clerks."

[18] According to the evidence, the fact was admittedly true that in the offices of the assessor, tax collector, and county clerk there were employed relatives of each other within the forbidden degree. That far the privilege of fair comment on matters of public interest, based on actual facts or conditions, was not exceeded. But the further sweeping charge imputed to appellant was not so conclusively established, that he and the other officers entered into a "pool" or prearrangement respecting appointment of relatives. Although the appellant denied, yet the circumstances may tend to prove the precise charge imputed. And this conflicting situation of the evidence becomes a question for determination by the jury in the first instance. It is not sufficient, in order to decide the question as a pure matter of law, that the evidence establishes the existence of suspicious circumstances of an element that makes up the offense charged. They may or may not have made a "pool" or agreement

respecting the appointments, according as inference may be drawn from the circumstances. If the appointments were not the result of agreement, express or implied, there is in no wise a violation of the terms of the law. It is required that the evidence establish the truth of the facts coextensive with the precise charge imputed. Cotulla v. Kerr, supra. And the plea of justification is not sustained unless the evidence goes to prove every element essential to the truth of the charge imputed to the appellant. Dement v. Printing Co., 14 Tex. Civ. App. 391, 37 S. W. 985. A jury question is presented in this respect.

[19] In conclusion, we are of the opinion that the court erred in the ruling only so far as pertains to publications referred to herein as eighth and ninth articles. That publications respecting public officers are in a measure privileged is recognized by the weight of authority and the statute. There must be freedom of fair comment and criticism, made in good faith and without malice, upon facts that are true, of the integrity and misconduct of public officers as such. It is of public concern and in public interest. The privilege, however, of discussion in such cases does not extend to the making of false statements of fact, even though made in good faith and with reasonable cause to believe it true. The statement of fact published must be true in all respects.

The judgment is reversed, and the cause is remanded.