**CHURCH OF SCIENTOLOGY OF CALIFORNIA, INC., Plaintiff,**

v.

**Bernard GREEN and Barbara Green, Defendants.**

**No. 69 Civ. 5745.**

United States District Court, S. D. New York.

Feb. 9, 1973.

Silk, Slonim & Young, New York City, for plaintiff; Howard Slonim, New York City, Joel Kreiner, Los Angeles, Cal., of counsel.

John J. Seffern, New York City, for defendants.

LEVET, District Judge.

The present action, by way of a counterclaim, is for libel brought by defendants Bernard Green and Barbara Green against plaintiff The Church of Scientology of California, Inc. (sometimes referred to as "the Church"). One of the original claims of the Church sought to enjoin the Greens from holding themselves out as "bona fide" ministers of the Church. All claims of the Church have been withdrawn.

Although the case has been completely tried, the sole issue for determination presently before this court is whether there was publication of the alleged libelous statement. Obviously, if there is no publication then there is no libel. Other issues, although tried, have been deferred pending a decision on this limited issue.

After hearing the testimony of the parties, examining the exhibits, the pleadings, the Proposed Findings of Fact and Conclusions of Law with respect to the issue of publication, this court makes the following Findings of Fact and Conclusions of Law:

## FINDINGS OF FACT

1. This court has jurisdiction over the subject matter of the litigation and the parties hereto.

2. The Church of Scientology of California, Inc. is a non-profit corporation, incorporated under the laws of the State of California, with its principal place of business in Los Angeles, California.[1] (288[2]; Ex. 6.)

3. Bernard Green and Barbara Green reside at 685 West End Avenue, New York, New York, and are presently operating from that address an unincorporated association known as the "International Awareness Center."

Bernard Green became a member of Scientology in 1953 and received training for several years thereafter. He held a "franchise" of the Church of Scientology and was operating said franchise in 1969. In such a capacity he conducted spiritual counseling. (17–34, 38–43, 69.)

---

1. For a thorough discussion of the structure, history and goals of the "unusual" Church of Scientology see the extraordinarily able opinion of Judge Skelly Wright in Founding Church of Scientology v. United States, 133 U.S.App.D.C. 229, 409 F.2d 1146 (1969). See also, Founding Church of Scientology v. United States, 188 Ct.Cl. 490, 412 F.2d 1197 (decided July 16, 1969); Church of Scientology v. United States, United States Court of Claims No. 226–61 (decided August 7, 1968).

2. Numbers in parentheses, unless otherwise specified, refer to the stenographic minutes of the trial before this court on October 4, 5, and 6, 1972.

Barbara Ferraro married Bernard Green in 1968 and together they operated the Scientology franchise. (170–171.)

On or about November 20, 1969 the Scientology franchise held by the Greens was cancelled by a notice from the Church of Scientology of New York. (123–124; Ex. 3.)

4. On December 10, 1969 a document from the Church bearing the heading, "Writ of Expulsion," was received by Bernard Green in the mail. The document, dated December 3, 1969, contained the alleged libelous statement:

> "1. Further evidence found indicts Bernard Green of attempted blackmail of parishioners he has counseled." (50–52; Ex. B.) [3]

Clarice Jackson, an Ethics Officer and member of the Church of Scientology of California, authored the writ which was sent to Bernard Green. After the formulation of the writ Jackson personally carried it to Fred Hare and Hanna Eltringham, officers of the Church, for their approval. The names of Jackson, Hare and Eltringham appear on the writ (Ex. B) as co-originators. Jackson then typed the original handwritten draft onto a stencil. Two copies of the stencil were then mimeographed, in Jackson's presence, by one James Isaacson. Isaacson was a L. Ron Hubbard (LRH),[4] Communicator, whose duties were "to watch the organization, that it was running correctly, that it was following the prescribed policy . . . and that the ethics decisions that came down were done correctly . . ." (374.) In such a capacity Isaacson was responsible for mimeographing ethic orders such as the writ sent to Bernard Green. (325–326, 374–375; Ex. B.)

Clarice Jackson mailed one copy of the writ to Bernard Green and placed the other copy in the locked files of the Church. (339–342.)

The original writ prepared by Clarice Jackson differed from the letters or copies of the writ claimed by the Greens to have been received by other members of the Church (Ex. B) in three respects:

(A) It did not have a border of approximately two inches from the top and bottom edges of the paper;

(B) There were no initials on the original prepared by Jackson as found in the lower left corner of Exhibit B;

(C) The writ, when mailed by Jackson, was placed in a white envelope and folded in thirds. There is no indication on Exhibit B, the writ received by Bernard Green, that it had been folded.

6. Bernard Green's allegation of publication by the Church is not supported by the credible evidence.

Green contends that there was publication of the writ when it was mailed in California and received in New York by Barbara Green, Michael Gerson, Michael Kates, Frank Catricola and Allan Ferguson.

(A) Barbara Green testified that she first saw a copy of the writ when her husband showed it to her. (159–160.) This, obviously, is not a publication on which a libel action can be based since Bernard Green himself "published" it.

(B) Michael Gerson, who had received counseling from Bernard Green in 1969, testified that he received a copy of the writ on October 4, 1969. Gerson said the letter came in a business envelope and that it was folded in thirds. (148–149.) Furthermore, he had no definite recollection from whom or from which branch of the Church of Scientology, if any (California or New York), the letter came. (241–243.)

(C) Michael Kates, who received counseling from Bernard Green, testified that he received a copy of the writ in the mail in December of 1969. He also conceded that he did not know where the writ came from. (233–242.)

(D) Frank Catricola, who received counseling from Bernard Green, testified

---

3. Exhibit B is Appendix I hereto. In this opinion I am proceeding on the presumption that this statement is libelous.

4. L. Ron Hubbard is the founder of Scientology and resides somewhere at sea. (260.)

that he received a copy of the writ on or about December 15 or 16, 1969. He did not testify as to where the writ came from. (273–276.)

(E) Allan Ferguson, the Executive Secretary World Wide for Scientology and a member of the Executive Council, working in England in 1969, testified that he saw a copy of the writ in the course of his official duties in December 1969. Ferguson said that the writ was brought to him by executive officers either Roger Wright, a LRH Communicator, or by Jane Kember, who was the Deputy Guardian or Guardian World Wide of the Church of Scientology. Ferguson passed the copy of the writ on to Hubbard "wherever he might have been." (259–261.) Ferguson had a duty to see the writ. Accordingly, there was no publication.

I find that publication of the alleged libelous writ has not been shown through any of the aforementioned witnesses.

In summary, I find that there was no publication of the alleged libelous statement.

## DISCUSSION

Bernard and Barbara[5] Green bring this action for libel against the Church of Scientology of California, Inc.

■■ The basic choice-of-law question requires no extended discussion. What law applies, New York or California? In such cases as this, founded upon diversity of citizenship, a federal district court applies the substantive law of the state wherein it sits, including the rules of conflict of law prevailing in that state. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Jaftex Corp. v. Randolph Mills, Inc., 282 F.2d 508 (2d Cir. 1960). New York's rule of conflict of law, therefore, furnishes the guide. It plainly provides that the substantive law applicable to an alleged tort is "the place which has the most

significant relationship with the subject matter of the tort charged." Nader v. General Motors Corp., 25 N.Y.2d 560, 307 N.Y.S.2d 647, 255 N.E.2d 765 (1970). See also Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E.2d 279 (1963). Accordingly, the substantive law of New York governs. Bernard Green is a citizen of the State of New York. Receipt of the alleged libelous statement by Bernard Green took place in New York. Alleged publication, in all but one instance (i. e., Ferguson) took place in New York. New York thus has the greatest interest in the outcome of the litigation.

The only substantive issue presently before this court for determination is whether or not there was publication of the alleged libelous statement.

On December 10, 1969 a "Writ of Expulsion" (Ex. B) was received in the mail by Bernard Green from the Church. The writ or letter contained the alleged libelous statement:

"Further evidence found indicts Bernard Green of attempted blackmail of parishioners he has counseled." (Ex. B.)

■■ It is elementary that there can be no libel, regardless of the nature of the statement, unless there is publication. Mere receipt of an alleged libelous statement by the one claiming to be defamed does not establish libel.

Law in the field of defamation has changed considerably in a short span of time. However, an enunciation of Judge Cardozo in Ostrowe v. Lee, 256 N.Y. 36, 175 N.E. 505 (1931) is "as good as new":

"In the law of defamation, 'publication' is a term of art. . . . A defamatory writing is not published if it is read by no one but the one defamed. Published, it is, however, as soon as read by any one else. [Citations omitted.]" (At p. 38, 175 N.E. at p. 505.)

5. In disposing of this case I have not considered the question of whether Barbara Green is a proper party, although it would seem that she has no right of action since her husband was the one allegedly defamed.

■ Furthermore, there is no publication if the defamatory statement is exposed to a third party by the person claiming to be defamed. Horovitz v. Weidenmiller, 53 N.Y.S.2d 379 (S.Ct. N.Y.1945); Shepard v. Lamphier, 84 Misc. 498, 146 N.Y.S. 745 (1914); Galligan v. Kelly, 31 N.Y.S. 561 (Sup. 1894).

The evidence unequivocally establishes that the Church issued only two "original" Writs of Expulsion. One writ was mailed to Bernard Green in New York, while the other was maintained in the locked files of the Church.

Clarice Jackson, an Ethics Officer of the Church, charged with the responsibility of issuing such writs, drew up the writ in question. She had the writ co-signed, as required by the rules and regulations of the Church, and then personally drew up the stencil for the two "original" mimeographed documents. Furthermore, the physical dimensions of the writ prepared by Jackson differ from that document allegedly received by Green and others—that is, it did not have a border of approximately two inches, there were no initials in the lower left hand corner and the writ, when mailed, was folded into thirds.

Bernard Green attempts to establish publication by alleging that the writ was received by others. However, his proof falls far short of the requisite and fails to rebut the well-documented steps taken by Clarice Jackson.

Bernard and Barbara Green put on the stand several persons who claimed that they received a letter or a copy of the writ in the mail. However, not one witness was certain that the writ came from the California church. Even approaching the situation in the light most favorable to claimants and assuming that every witness testified that the writ came from the Church of Scientology of California, this does not counteract the testimony given by Clarice Jackson. Indeed, a speculative argument could be made that it was not the Church of California from whom these persons received the writ but from the defendants, the

Greens. There is testimony that the copies received by other persons were Xeroxed copies. (328.)

In one instance the Greens' contention of publication is plausible but falters upon close examination.

The proof clearly establishes that Allan Ferguson, the Executive Secretary Word Wide for Scientology, received, in England, a copy of the alleged libelous writ. On its face this constitutes publication; exhibition of a libelous document to a third party.

■ However, the publication in this instance is subject to a qualified privilege and is, therefore, permissible. A communication made between officers within the organizational structure of a church, or a corporation for that matter, made in good faith, on any subject in which the one communicating has an interest or in which there is a duty, is privileged if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable. Such is the case even though the duty is not a legal one but only a moral or social duty or obligation. John W. Lovell Co. v. Houghton, 116 N.Y. 520, 22 N.E. 1066 (1889); Garriga v. Townsend, 285 App.Div. 199, 136 N.Y.S.2d 295 (1954); Doyle v. Clauss, 190 App.Div. 838, 180 N.Y.S. 671 (1922); 26 Brooklyn L. Rev. 147.

■ Allan Ferguson saw a copy of the writ in the normal course of his duties as Executive Secretary World Wide for Scientology and as a member of the Executive Council. The writ was properly brought to Ferguson by a LRH Communicator or by the Deputy Guardian of the Church, both executive officers. Assessed within the light of the peculiar structure of the Church of Scientology, such communication to Ferguson was subject to a qualified privilege and does not constitute a publication.

■ On the totality of the evidence the Greens have failed to show publication on the part of the Church and,

indeed, "until the publication, the act is not complete in its mischief. Before it is dispersed abroad, it can produce no present or actual injury, either to the public or to the individual, and until then there is a *locus penitentiæ* on the the part of those concerned in the composing and writing." Youmans v. Smith, 153 N.Y. 214, 218, 47 N.E. 265, 266 (1897).

## CONCLUSIONS OF LAW

1. The court has jurisdiction over the subject matter of the litigation and the parties hereto.

2. Defendants Bernard. Green and Barbara Green have failed to prove that plaintiff, Church of Scientology of California, Inc., published or caused publication of the alleged libelous statement.

3. Plaintiff, Church of Scientology of California, Inc., is entitled to judgment dismissing the counterclaim but without costs.

Settle judgment on notice pursuant hereto.

## APPENDIX I

### (GOLDENROD PAPER)

### WRIT OF EXPULSION

December 3, 1969

To: Those Concerned

From: MAA AOLA

Subject: Additions to Writ, 19 November—Bernard Green.

1. Further evidence found indicts Bernard Green of attempted blackmail of parishioners he has counselled.

2. He is, further, guilty of contributing to the destruction of a high ranking Church member by his vicious and damaging rumours concerning the Church and Scientologists of good standing.

3. He has continued to pretend connections to the Church of Scientology, and is continuing his misuse of counseling materials.

4. Prosecution for the illegal use of copyrighted Church counselling materials will follow.

5. BEWARE of the person. He is not to be trusted in any way.

Ens. Clarice Jackson
MAA AOLA
for
Ens. Fred Hare
Captain AOLA
for
Cmdr. H. Eltringham
Deputy Commodore Flotilla

HE:FH:CJ:dr