## HOUSTON PRESS CO. v. FERGUSON.
### (No. 1124—5058.)

Commission of Appeals of Texas, Section A.
Jan. 9, 1929.

Fulbright, Crooker & Freeman, W. B. Bates, and John H. Crooker, all of Houston, for plaintiff in error.

R. L. Henry, of Houston, for defendant in error.

CRITZ, J. C. Bruce Ferguson, defendant in error, brought this suit as an action for libel against Houston Press Company, hereinafter called the press company, for publishing and circulating nine alleged libelous articles in several issues of the Houston Press, a newspaper owned and published by the press company at Houston, Tex., on various dates extending from April 12, 1924, to and including June 28, 1924. At the time the alleged libelous articles were published, Ferguson was tax collector of Harris county, Tex., and was a candidate to succeed himself. The defenses relied upon by the press company were that the publications were true, that they were privileged, and were published without malice. After hearing the evidence, the trial court peremptorily instructed the jury to render a verdict in favor of the press company. Ferguson appealed to the Court of Civil Appeals, where the action of the trial court as to the first seven articles complained of was sustained, but the Court of Civil Appeals reversed the trial court as to the eighth and ninth articles complained of in the petition. 1 S.W.(2d) 387.

We are of the opinion that the Court of Civil Appeals was correct in their holding with reference to the first seven and the last or ninth article, but that said court was in error in its holding with reference to the eighth article.

The Court of Civil Appeals has very ably and clearly announced the law as applied to the facts in the record, with reference to the first seven, and the ninth article, and no good purpose could be subserved by our further writing with reference to these matters here.

The eighth article is one of date April 12, 1924, and is as follows:

"To Tax Collector Bruce Ferguson: If it were a private concern you were working for, and made errors of $23,397 one year and $13,243 the next year, in your annual reports, where do you think you would land? Sam Houston."

It is shown that this article appeared in what was called the "Sam Houston" column of the paper.

The undisputed evidence going to establish the truth of the above article is Ferguson's own testimony and the testimony of H. L. Washburn, county auditor of Harris county, who was introduced as a witness, and his veracity thereby vouched for by Ferguson. This testimony is as follows:

#### "Testimony of Ferguson.

"This book which is now exhibited to me headed 'Reports of Land and Town Lots situated in Harris County, Texas, redeemed from the State in the year ending March 31, 1923. * * * (This is quoted from form 93.) (S. F. pp. 293–4.)

"On this page of this redemption report which is now shown to me there are some errors, there are four lines scratched out * * * every one of these things here indicate a correction, you could not take a line out of that page without deducting about six or eight items * * * you will find nearly every page has from one to a half dozen lines crossed out. There were that many corrections to be made, it had to be corrected before it went to the Comptroller * * * it is a fact that practically every page in this report shows some corrections and you find errors all the way from two or three dollars up to more than $2,500 in one instance * * * this report is rather voluminous and I would not have the remotest idea as to what the errors in this report would amount to in dollars and cents. It might be ten thousand dollars. This is from the original form as copied on there, then taking out the corrections and adding those that ought to be taken up there may be at least $10,000. I would not doubt but that there were that

many errors in this same report for the other years * * * this is part of my annual settlement.

"This document which is now exhibited to me is an audit of my department for the year 1923, made by the County Auditor, it is one of Mr. Washburn's records * * * this is what we call the annual settlement.

"The first error shown here is an error of addition, making a difference of 43 cents, that is a small thing, but it is just as much out of balance, that is the reason it is submitted back to the Tax Collector for correction * * . * there is a matter of difference a .wrong amount of something or other on each of these ·items on this page. I think that is correct, without going into the details of it. There are 27 lines of items on this page.

" * * * from page 8 of this book on through it is a statement of the corrections that were necessary in my report and records with respect to the different amounts and different portions of it, and that continues throughout this book from page 8 to 57 inclusive * .* * the pages are of unusual size being about 18 by 22 * * * in other words, as made and tendered by me originally it was incorrect, in the respects and· as to the amounts and in the details as set forth on these 50 pages.

" * * * Adding all of these various amounts together that is the total addition and deduction to forms 16, 17, and 18; add these to the items that we have called off I make that $8,821.49.

"If this report shows that there were $8,300 in errors during my first year in office I would grant that there might be five or six thousand dollars in the second year of my term * * * if I had $8,300 worth of corrections in the audit of 1923 and $5,000 the other year, part of it would be in the other report, then I would have a little over $13,-000 in corrections for the two years * * * I doubt if there would be as much as $10,000 worth of errors each year in form 93. Of course, we have 1923 (meaning the record in court) and I said it was approximately $10,-000, but I could not tell whether or not there would be that much in the other reports * .* * it might possibly be less or possibly more. This $12,292 of corrections in what Mr. Washburn called recoveries are not included in the annual audit or in form 93. There are $13,000 in my two annual reports, $20,000 in my two years under form 93 and $12,296 worth of recoveries and corrections, that is about $45,000 in some kind of corrections in the two years."

County Auditor Washburn, who was a witness for Ferguson, testified:

### "Testimony of Washburn.

. "The amount of time consumed in my department in checking the tax matters during Mr. Ferguson's administration, I imagine, required four or five, maybe ten, times as much attention as it would now, and as it would in normal years before that time.. It would be a guess on my part to attempt to state how the number of errors in Mr. Ferguson's administration compared with the errors in the other administration,·but in my judgment it would average about the same proportion, somewhere between five· and ten to one. In other words, he had somewhere between five and ten times as many errors and corrections in his reports as the other collectors had, that is my honest opinion about it, and I have been in that office since 1913. Ordinarily, I would say that he had as many errors as all the others put together, I would not hesitate in saying that. During the two years that Mr. Ferguson was in office I would say that he had as many corrections and it took as much time to correct them, and I had to write as many letters during that time as all of the rest of them put together."

We agree with the holding of the Court of Civil Appeals that the language of this article is unambiguous, and, in effect, is an assertion that two successive annual reports made out by Ferguson contained errors of a sufficiently serious nature to cause a private concern to "land" or discharge him therefor; and, further, that the language of the article implies, without imputing corruption, incompetency or gross carelessness in the discharge of official duties by Ferguson.

We are of the opinion, however, that the eighth article, above quoted, is fully and completely justified, and its truth fully and completely established by the testimony above quoted.

Again reverting to the ninth article, being the one of date June 28, 1924, which is set out in the opinion of the Court of Civil Appeals, and which is as follows:

"A number of the Klansmen around the court-house have a way of beating the nepotism law. The law forbids the employment by an official of any near relative. But Ben Witt, tax assessor, Albert Townsend, county clerk, and Bruce Ferguson, tax collector, aren't bothered by a law like that. They just make a little pool, and one employs the relatives of another, and vice versa. They just swap back and forth. That puts them beyond the reach of the law. But they are in fact violating the very spirit of the law. Isn't a public official who uses a device to side-step the wording of the law, but who tramples on the spirit and purposes of the law, as culpable as one who commits a straight-out violation of the law? The employment of relatives of office-holders in Texas was so fraught with evils that the nepotism law was passed. There were some definite reasons for its passage. But these Klan office-holders are ignoring all those reasons. They are ignoring everything, except the words of the law,

and escaping its penalties. What have Witt, Townsend, Ferguson, and Judge Bryan of the county court to say for themselves? Come on, now, and tell us just how you excuse and condone this action. Good Klansmen should always be ready with an excuse for most anything."

It will be noted that this article in substance accuses Ferguson, together with the other officers of Harris County, of "they just make a little pool." Now, we are of the opinion that the facts shown in the record with reference to the way and manner in which numerous relatives of the several county officers of Harris county, including Ferguson, employed each other's relatives, are, in law, amply sufficient to sustain a finding by the jury that the things charged by the alleged article of date June 28, 1924, are true, but we are not prepared to say, as a matter of law, that such facts conclusively establish the truth of the statement, "they just make a little pool," in view of the testimony of Ferguson himself to the effect that there had been no agreement or pool with reference to this matter.

Believing that the Court of Civil Appeals was correct in holding that the matters with reference to the ninth article only should have been submitted to the jury, we recommend that the judgment of the Court of Civil Appeals be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed, as recommended by the Commission of Appeals.