## WEST TEXAS UTILITIES CO. v. WILLS.
### No. 8827.

Court of Civil Appeals of Texas. Austin.
Nov. 29, 1939.

Rehearing Denied Jan. 3, 1940.

A. K. Doss, of Abilene, and Collins, Jackson & Snodgrass, of San Angelo, for appellant.

Wm. E. Davenport and T. R. Johnston, both of San Angelo, for appellee.

BLAIR, Justice.

This appeal is from an order overruling the plea of privilege of appellant, West Texas Utilities Company, a corporation, to be sued in Taylor County, the county of its residence. The plea of privilege was duly controverted, the controverting affidavit, itself, succinctly stating a cause of action for slander in strict accord with the requirements prescribed for such controverting affidavit by the Supreme Court in the recent case of A. H. Belo Corporation v. Blanton, Tex.Sup., 129 S.W.2d 619. Appellant concedes that the controverting affidavit sufficiently alleged a cause of action for slander and all necessary facts to maintain venue of the suit in Tom Green County, under Sub. 29 of Art. 1995, Vernon's Ann.Civ.St., which provides that a suit for "libel or slander shall be brought * * * in the county in which the plaintiff resided at the time of the accrual of the cause of action * * *." But appellant contends that appellee failed

to prove "the time of the accrual of the cause of action" (1) because the statements shown to have been made by Huss, chief engineer in charge of appellant's power plant in Tom Green County, were not slanderous per se and no special damages were shown; and (2) because, if the statements made by Huss constituted actionable slander, then appellee failed to prove that Huss was acting on behalf of appellant in making the slanderous statements. More briefly, appellant's contention is that in order to maintain venue in Tom Green County, appellee must not only allege in his controverting affidavit but prove that "a cause of action for slander accrued," citing the holding of the Supreme Court in the Belo case, supra [129 S.W.2d 622], as follows: "The provisions of Subdivision 29 require the following venue facts: (1) A cause of action for libel accrued; (2) that such cause accrued on a certain date; and (3) that the plaintiff resided in the county where the suit is filed upon that date."

It is not contended that appellee failed to prove the last two requisite venue facts required by the decision; but that he failed to prove the first requisite venue fact for the two reasons above stated. We do not sustain these contentions.

■ Appellee established at least a prima facie case of liability for damages for slander against appellant on the venue hearing, by alleging in his controverting affidavit and by proving that for several years he had been employed by appellant as a switch board operator in its power plant at San Angelo, Tom Green County, Texas, where he had resided continuously for about nine years, and where he resided at the time the cause of action accrued; and by proving facts and circumstances which tended to show, in substance, that because of his activities in the organization of a union of appellant's electrical employees under the recent Wagner Labor Relations Act, 29 U.S. C.A. § 151 et seq., appellant, its agents and officials conspired to discharge him, by first demoting him from his regular duties as switch board operator to the "bull gang" and to hard labor, where, on the third day thereafter he received an injury to his back while working on a jet and became disabled to work. That since his injury on December 7, 1937, he has not worked and has not been able to work; and that at the time of his injury he weighed 186 pounds, and at the time of this hearing he weighed 153 pounds, and has been in bed about three-fourths of the time since his injury, and was still not able to work. That W. E. Huss, chief engineer in charge of appellant's power plant and under whom appellee worked, prepared his claim for compensation under the Workmen's Compensation Law, Vernon's Ann.Civ.St. art. 8306 et seq. and that while he was disabled to work because of his injury, and while he was still in the employment of appellant and on the payroll of appellant, the officials of appellant, and particularly W. E. Huss, chief engineer, preparatory to firing or discharging appellee because of his activities in the union which appellant was opposing and fighting, circulated the slanderous statement or remark complained of among appellee's fellow workers at the power plant, and particularly to Wm. Camfield and to the adjuster of the insurance company which carried workmen's compensation insurance on the employees of appellant, including appellee; that the fellow employees and especially Camfield and the insurance adjuster knew the circumstances of appellee's injury and of his being entitled to compensation and under the custom of appellant company to his wages during disability; and that the chief engineer Huss stated to them that there was nothing wrong with appellee, but that he was just trying "to put the big breeches on the company"; which remark or statement meant and was understood to mean that appellee was merely faking an injury so as to take advantage of appellant and the insurance company; that appellant, through Huss and other officials, made the effort to keep appellee from obtaining workmen's compensation, on which issue appellee testified as follows:

"Q. What effort, if any, did the West Texas Utilities Company make to keep you from collecting your insurance? A. According to the insurance company's adjuster, he told me that Mr. Huss and other officials had told him there was not a damned thing wrong with me, and that they were holding up on the compensation for that reason until they could investigate it. I asked him the question if that was not what the chief engineer and other officials had told him and he said, 'that is exactly right; that is what they told me.'"

Appellee also testified, in substance, that he never had a cross word or complaint about his work at any time, but that because of the ill feeling of appellant against appellee for his union activities, Huss and other agents and officials of appellant made the

remark or statement that he was faking an injury, which was maliciously and purposely made to injure the character of appellee, and so as to leave the impression that he was being fired and dropped from the payroll for faking an injury, rather than because of his activities in the organization of the labor union against the wishes and over the protest of appellant, its agents and officials.

Wm. Camfield testified that chief engineer Huss made the statement to him that appellee was trying "to put the big breeches on the company," which remark or statement he understood to mean just what was said, and that appellee was faking an injury so as to take advantage of his employer and the insurance company.

On January 20, 1938, Huss, the chief engineer, called appellee to the power plant and gave him a check, paying him for his wages up to January 15, 1938; and as reasons for firing appellee stated:

"Q. What did he say to you as the reason he was firing you? A. He said on the shift I was working on they were not getting the cooperation out of me they thought they should have.

"Q. Did he explain in what way? A. No, he did not; he said, 'we are not getting the cooperation out of you on the shift you have been working on and that is why we transferred you to the repair gang, and as soon as you went to work there you claim you were injured, and according to your doctor and the company doctor you are not injured, and under those conditions we cannot use you any longer; here is your check.'"

Appellee also testified that he went to Abilene, to the home office of appellant, to find out why the company had fired him, and that the following conversation with the vice-president and general manager took place:

"Q. To whom did you talk? A. I talked to Mr. Schroder, vice-president and general manager.

"Q. What was your conversation? A. I asked him the reason I was fired and he asked me if I hadn't been told why. I said, 'Yes, but I want to get it from you.' He asked the reason they gave me and I told him and he said that was correct.

"Q. He asked you if you had been told why you were fired? A. Yes, sir.

"Q. And you told him you had been told why? A. Yes, sir.

"Q. What did you tell him? A. I told him that the Chief told me he was not getting the cooperation out of me on the shift I had been working on and that was the reason he had transferred me to the repair gang, and shortly after I began work on the new job I claimed I was injured, and that according to my doctor and their doctor I was not hurt, and that under those conditions the Company did not want me any longer, and he said that was right."

The facts and circumstances detailed establish at least a prima facie case of slander by the chief engineer of appellant, who was shown to have the authority to fire or discharge appellee, which act of the chief engineer was also later ratified and confirmed by the vice-president and general manager of appellant. The chief engineer made the statement to appellee's fellow employees and to the insurance adjuster, and in connection with his duty of controlling appellee in his employment and in firing and discharging him, to the effect that appellee was merely faking an injury so as to impose upon and to in effect defraud both appellant and the insurance company in his claims for wages and compensation insurance during the time he was disabled by reason of the fake injury; which statement was falsely and maliciously made, according to appellee's testimony, and was made because he had incurred the ill will of appellant in helping organize a labor union of appellant's employees, under the recent Federal Labor Relations Act, which union appellant was fighting through Huss and its other officials, who talked with appellee while he was in the employ of appellant, protesting his activities in the organization of such union.

Appellant contended that the statement shown to have been made by Huss was not slanderous per se, and since no special damages were shown, no cause of action for slander accrued. The general rule is that it is necessary to accuse a person of a crime in order to make such accusation per se slanderous; but there is an exception to this general rule which is as well settled as the general rule, and which is that words not otherwise actionable per se sometimes become so if spoken of a person engaged in a particular business or profession, where they charge him with fraud, indirect dealings, or incapacity, and tend to injure him in his trade, occupation, employment, or business. That exception to the general rule is applicable to the instant case, and 'a clear statement of it is made in the case of Mayo

v. Goldman, 57 Tex.Civ.App. 475, 122 S.W. 449, 450, as follows: "To impute to a clerk that he has been bribed in connection with the discharge of duties he owes his employer does not charge him with a crime known to our laws, and therefore we are of the opinion that the imputation charged to appellee did not bring his case within the general rule. An exception, however, to the rule as well established, perhaps, as the rule itself, is that 'words which affect a person injuriously in his office, profession, or occupation are actionable per se, though they are oral, regardless of the fact that they do not impute the commission of any crime.' * * * To impute to a clerk that he has been bribed to betray the confidence of his employer unquestionably tends to injure him in his vocation, and, if the imputation is false, it is per se slanderous. Fowles v. Bowen, 30 N.Y. 20; Missouri Pacific Ry. Co. v. Richmond, 73 Tex. [568], 573, 11 S. W. 555, 4 L.R.A. 280, 15 Am.St.Rep. 794. We understand the rule to be that when words spoken are per se slanderous, because they impute a crime or because they tend to injuriously affect the complainant in his business, or trade or calling, he is entitled to recover at least nominal damages, if the speaking thereof is not privileged, and if the imputation they convey is false. In such a case, in the absence of evidence tending to show the contrary, it will be presumed that the words were spoken maliciously."·

To the same effect are Missouri Pac. Ry. Co. v. Richmond, 73 Tex. 568, 11 S.W. 555, 4 L.R.A. 280, 15 Am.St.Rep. 794; Scheidler v. Brochstein, Tex.Civ.App., 73 S.W.2d 907; Southwestern Telegraph & Telephone Co. v. Long, Tex.Civ.App., 183 S. W. 421; 27 Tex.Jur., 603, § 10.

■■ In this connection, we sustain the proposition of appellee that an employee's compensation under the Workmen's Compensation Act is a part of and incident to his employment, trade, occupation, or calling; and an employee's union activities and association are a part of and incident to his employment, trade, occupation, or calling, under the modern business methods; and an employee's right to remain on the payroll and in the employment of his employer and to continue to receive his wages during disability because of injury is a part of and incident to his employment, trade, occupation, or calling; and that to falsely and maliciously accuse appellee of faking an injury so as to take advantage of his employer and of the insurance company carrying the compensation insurance for his employer injuriously affected appellee in his business, trade or calling as an electrical switchboard operator; and that the effect of such statement was slanderous per se, entitling appellee to general damages; and his cause of action for slander was established without the necessity of proving special damages. We also think that appellee established special damages; but under the rules stated and applicable here that question need not be discussed.

■ Nor do we think it necessary to discuss at length the second contention of appellant that if the statements made by Huss constituted actionable slander, then appellee failed to prove that Huss, the chief engineer, was acting on the part of appellant in making the slanderous statement. Briefly, the evidence showed that Huss had the authority to demote and to fire and hire appellee and had complete control over him, and did fire him. The statement made by Huss was in connection with his authority to control and fire appellee, which he exercised in appellee's case, and such action was later ratified and confirmed by the vice-president and general manager of appellant. The following authorities sustain the conclusion that the slanderous statement made by Huss was made in the discharge of his duty of controlling, hiring, and firing appellee, and was in reference to the duty owed by appellee to the appellant corporation, which can only act through its agents and officials; and that the statement was made in the furtherance of the corporation's business; ·and that the statement made by Huss was ratified and confirmed by appellant. Great Atlantic & Pac. Tea Co. v. Harris, Tex.Civ.App., 75 S.W.2d 974; Magnolia Petroleum Co. v. Guffey, Tex.Civ.App., 59 S.W.2d 174; Providence-Washington Ins. Co. v. Owens, Tex. Civ.App., 207 S.W. 666; Southwestern Telegraph & Telephone Co. v. Long, Tex.Civ. App., 183 S.W. 421; Daughtry v. Blanket State Bank, Tex.Civ.App., 41 S.W.2d 527; Missouri Pac. Ry. Co. v. Richmond, 73 Tex. 568, 11 S.W. 555, 4 L.R.A. 280, 15 Am.St. Rep. 794; Evans v. McKay, Tex.Civ.App., 212 S.W. 680.

The judgment of the trial court is affirmed.

Affirmed.

BAUGH, J., did not take part in the decision of this case.