**BELL PUB. CO. et al. v. GARRETT ENGI-NEERING CO.**

No. 11146.

Court of Civil Appeals of Texas. Galveston.

Dec. 12, 1940.

Rehearing Denied Jan. 9, 1941.

302

GRAVES, Justice.

These two appeals, taken and considered together, are from a judgment of the 55th District Court of Harris County, overruling the several pleas of privilege of the Bell Publishing Company, a corporation, and of Dr. O. F. Gober, to be sued in Bell County, Texas, where each of them resided, rather than in Harris County, where the venue of this suit was laid against them jointly and severally, the appealed-from order containing this recitation: "The Court, upon consideration of the said Pleas of Privilege and the Controverting Plea and the evidence duly offered, and being advised in the premises, finds that the defendant, Bell Publishing Company, and the defendant, Dr. O. F. Gober, were, at the time of the institution of this suit, and the time of service of process on them, and at the time of the execution and filing of their Pleas of Privilege herein, residents of Bell County, Texas, and did not reside in Harris County, Texas; that plaintiff's suit is one for damages arising from an alleged libel; that plaintiff has made out a prima facie case herein for a cause of action for libel accruing on May 21, 1939, when plaintiff then, ever since, and before, resided in Harris County, Texas, and by reason thereof Defendants' Pleas of Privilege and each of them should be denied and overruled."

There having been nothing else involved, the hearing was advanced by this court—upon motion therefor—pursuant to its Rule XI(a).

The appellee is also a corporation, resident in Harris County, Texas, and, as the basis for the suit thus designated in the quoted order, it, as plaintiff against the two defendants in the suit so filed against them in Harris County, alleged:

"That appellant Bell Publishing Company was the publisher of a daily newspaper in Temple, Bell County, Texas, to-wit: Temple Daily Telegram, and on the 21st day of May, 1939, printed and published the following article (by its co-appellant, Dr. Gober), towit:

"Sunday May 21, 1939. Temple Daily Telegram, Temple, Texas, Page 3.

"To the Home Owners and Voters of Temple.

"The tax payers of Temple have heretofore been very liberal in voting bond issues to provide paved streets, fire stations and equipment, school buildings and gymnasiums and adequate water and sewer systems.

Byron Skelton and Walker Saulsbury, both of Temple, and Clarence Lohman, of Houston, for appellants.

Sam D. Snodgrass, of Temple, and Howard, Reinhard & Schwing, of Houston, for appellee.

"Since the present Board of Commissioners were inducted into office about a year ago we have voted a bond issue of $275,000.00 and the government has made a grant of $225,000.00 for repairs, renewals and extension of our water and sewer systems, and which work is now in progress.

"Not content with this expenditure of $500,000.00 during their first year in office, they are now calling upon us to vote an additional bond issue of $850,000.00 to provide a municipally owned power distributing plant.

### "When Is This Expenditure of Public Funds Going To Stop?

"We are living in one of the most distressful periods within my memory, and a large per cent of the people of this city, and of the whole United States, is doing without things they really need, because of lack of cash and the fear of going deeper in debt.

### "We Can't Spend Ourselves Out of Debt or Out of the Depression.

"Individually and collectively we ought not to incur a debt at this time for anything not absolutely necessary.

"The paved streets, school buildings, fire protection, and water and sewer system were absolutely necessary when the people voted the respective bond issues to provide such improvements.

"Is it absolutely necessary at this time that we provide a municipally owned power distributing plant for our City Commission to experiment with?

"It occurs to me that there has been enough experimenting with governmental affairs during the past six and one half years, and during which time our national debt has been increased more than twenty billion dollars.

### "Is It Time That We Give Some Thought To Posterity?

"Should we continue to waste and squander public funds and pile up bonded indebtedness that will mean almost bondage to generations yet unborn?

"We have had throughout the nation sit down strikes of every kind and character, and it has occurred to me that it is about time the tax payers went on a sit down strike.

"I am unalterably opposed to a municipally owned power plant or distributing system, and for the following reasons:

"1. It will put too much government in business, and at a time when there is a crying need for more business in government.

"2. I can not believe it will result in any real saving to the users of electric energy.

"3. I know, and every sane person knows, that to successfully operate a utility of the kind there must be sound fixed policies extending over a long period of years, and since the governing body of the city is constantly changing, a successful operation of the utility would be almost impossible.

"4. If an independent distributing system is put in by the city: it means an economic loss of more than One Million Dollars by reason of the dismanteling of the present plant. I am in favor of strict regulations of all public utilities, but I do not favor killing an enterprise, or the dismanteling of our present plant in which so many widows, orphans and other innocent people have made investments.

"5. Because this bond election has been called by a vote of three out of five of the members constituting the Board of Commissioners of the City of Temple, and no member voting for the plan has ever had any experience whatever in the construction or operation of public utility.

"6. I have read the contract the Board of Commissioners has already entered into with Garrett Engineering Company, of Houston, and under the terms of which this company will be paid $39,525.00, whether it supervises the construction of the plant, or if the city should purchase the existing plant.

"7. The members constituting the Board of Commissioners of Temple are my warm personal friends, but I think they have made a most serious error in employing an engineering company to make the survey for, lay out, design and construct the distributing plant, when there is no person connected with the company who is a practical engineer, or who holds a degree of engineering. I am reliably informed that this company has never done any similar work, and by that I mean that it has never constructed such plant for any other city.

"8. I think our Board of Commissioners have made another great mistake in employing a firm of lawyers of San Antonio to handle the legal work and especially in view of the fact that we have a most competent and well experienced City Attorney who is paid for that purpose.

"9. I am not in favor of giving this said Board of Commissioners, or any other Board of Commissioners, that power to spend one and one-third million dollars, because I do not think any commission should have that much power.

"Do you?

"I am, therefore, calling a public mass meeting to be held at the Municipal Auditorium, 8 o'clock p. m., May 22nd (next Monday night), for the purpose of threshing the matter out and definitely determining whether or not Temple really needs this proposed Utility.

"Dr. O. F. Gober.

"(This is an advertisement, written and paid for personally by Dr. O. F. Gober)."

"Appellee further alleged that it was a corporation engaged in the work and profession of 'consulting and supervising engineers' on the date of the publication of said article and had been in such business for many years prior thereto; that on December 6, 1938, the City of Temple, Texas, a municipal corporation, contemplated the construction or purchase of an electric light and power distribution system for said city, and on that date entered into a written contract with appellee to do the engineering work for such enterprise, in consideration of a fee of 4.65% of the cost thereof, a copy of such contract being attached to the petition as 'Exhibit A'; that on May 15, 1939, the City of Temple, by resolution, ordered an election to be held for the purpose of voting bonds in the sum of $850,000.00 to provide funds for such electric light and power project, such election to be held on June 2, 1939, and while said campaign was in progress, the above article complained of in this suit was so published; that said article tended to and did injure and damage appellee in its business and credit, and did expose it to public hatred, contempt, ridicule and financial injury, and impeached the honesty and integrity of the officers of appellee; that it was libelous of and intended to libel appellee, and that it had been damaged in its business and profession in the sum of $50,000.00 general damages, and the further sum of $20,000.00 as exemplary damages, and prayed judgment against appellant, Bell Publishing Company, and appellant, Dr. O. F. Gober, jointly and severally for said amounts."

The challenged venue was laid in Harris County, pursuant to Subdivision 29 of R.S. Article 1995, providing in material substance that damage suits for libel may, at the election of the plaintiff, be maintained in the county in which plaintiff resided at the time of the accrual of the cause of action; by a stipulation between the parties, it was agreed that this plaintiff below, the appellee here, had been at all proper times a resident of Harris County; further, that the article sued upon had been written, published, circulated, and was of the precise content, all as set forth in the allegations quoted supra. It is further undisputed that issue was properly joined between the parties by the privilege-pleas on the one side and the controverting affidavit on the other, the hearing upon which was before the court without a jury.

These two appeals are therefore reduced to and predicated solely upon one comprehensive contention, which may be thus, in substance, restated: The evidence adduced by the appellee, having attempted to show only a prima facie cause of action for libel, or that such a cause probably existed in its favor, and wholly failing to show by a preponderance of it that a libel in all its parts, or a cause of action therefor, had been committed against it in Harris County, the court erred in overruling the pleas of privilege; subsidiarily, it is added that the publication so declared upon was privileged in favor of both appellants under Vernon's Texas Annotated Civil Statutes, Article 5432, absolutely as to the Bell Company, and qualifiedly as to Dr. Gober. In limine, the appellants further insist that this court is precluded from even inquiring into the thus-challenged sufficiency of the appellee's evidence to make out a cause of action for libel, because the trial court, in the quoted excerpt from its judgment, held as a matter of law that only a prima facie case for libel had ever been made or tendered by the appellee; wherefore, the only function left this court is to determine whether or not that declaration of the law is correct; they cite Gulf, C. & S. F. Ry. Co. v. Harvey, Tex.Com.App., 276 S.W. 895, as settling that presentment in their favor.

After careful consideration of elaborate briefs, supplemented by oral arguments from both sides, this court sustains the trial court's action in overruling the pleas, mainly upon these considerations:

▄▄▄ (1) It is not precluded from appraising the legal effect of the evidence heard by the trial court's evidently inadvertent declaration "that plaintiff has made out a prima facie case herein for a cause of action for libel on May 21, 1939"; this, for

the reason that the record otherwise conclusively shows the cause not to have been tried upon any such theory of law, the appellee, on the contrary, having offered and the court having heard evidence tendered as being in compliance with the rule governing the quantum of evidence necessary on a plea-of-privilege hearing, as declared in Compton v. Elliott, 126. Tex. 232, 88 S.W. 2d 91; which is, that the necessary venue facts in such hearing must be proven by a preponderance of the evidence, like any other facts; wherefore, the trial court's statement may properly be classified as the giving of a wrong reason for a proper judgment. Vol. 4, Texas Digest, Appeal and Error, headed "Review of correct decision based on erroneous reasoning in general", and cited cases; Vol. 3, Tex.Jur., p. 1129, note 18.

 (2) The necessary venue facts on this hearing, as declared in an analogous situation by the Supreme Court in A. H. Belo Corp. v. Blanton, 133 Tex. 391, 129 S.W.2d 619, as required by the provisions of applicable Subdivision 29 of R.S. Article 1995, were these: (a) That a cause of action for libel accrued; (b) that such a cause accrued on a certain date; and (c) that the plaintiff resided in the county where the suit was filed upon that date.

Since Nos. (b) and (c) of these requirements were eliminated by the stipulation here so made, only No. (a) was left as issuable, and for that reason the contest was so narrowed, as before indicated, both in the trial court and here;

(3) The trial court did not limit the evidence heard, nor deprive appellants of the privilege of presenting any, which they did not offer to do (except as to some exhibits), as a consequence of its quoted and apparent view that only a prima facie case had been made out; on the contrary, it heard full evidence, tendered at great length by the appellee, as reflected by a statement of facts, brought up with this record, of 130 pages; it showed the contract between the City of Temple and appellee, the Resolution and Order of the City's Board of Commissioners authorizing such contract, and the sued-upon article by Dr. Gober in the Temple Daily Telegram of May 21, 1939; also the full testimony of witnesses, M. T. Garrett and J. Blair Stuart, of which this is a fair summary:

"M. T. Garrett testified that at the time the newspaper containing Dr. Gober's sued-upon article reached his office in Houston, as a subscriber, his company had then and for several years prior thereto engaged itself principally with public utilities as consulting and supervising engineers for municipalities; at that time the company had connected with it several men in its employment other than its active officers; that he himself had had 20 years' experience as an engineer in some fifty projects, including light and power systems; that J. Blair Stuart, his company's vice-president, had had 10 or 12 years' experience and was a graduate engineer from Rice Institute, since when his work had been mechanical and civil; that mechanical engineering work involved the designing, planning, and supervision of construction of power plants and the generators and machinery constituting same; that the company had had connected with it at various times approximately 20 other engineers, some of whom were electrical, mechanical, hydraulic, and civil, and between March and August of 1939, covering the date of Dr. Gober's declared-upon article of May 21, 1939, his company, other than its two main officers, Stuart and Garrett, had engineers Hoemeyer, McVey, and Thomas with it; that his company had handled some 33 projects, listing them; that the appellee company had supervised the construction (which is what Dr. Gober's quoted article said the terms of the Temple contract required of this appellee) of nearly 50 projects then identified; that Garrett himself had once built a steam generating plant; that he was registered as a professional engineer with the State Board; that he was a professional engineer, having had broad experience in electrical work.

"J. Blair Stuart testified he received a B. S. degree in M. E. from Rice in 1922, and that since then his work had been the general practice of engineering; that he had been connected with the Garrett Engineering Company for nearly 14 years, and held the title of vice-president; that mechanical engineering included the supervision and construction of machines, including electrical ones; that he was registered as a professional engineer; that the first 3 years in college in securing an engineering degree—on a four-year course—were the same, whether it be civil, mechanical, or any other branch of engineering, and that the branches were so closely interrelated that an engineer capable of practicing one branch had to have a substantial knowledge of the other branches; that in reviewing the engineers connected with appellee company on May 21, 1939, the date of the Dr.

Gober article, he found that besides himself and Mr. Garrett that McVey was connected with them as ·a registered professional engineer in electrical engineering, Hoemeyer registered as a civil engineer, Allen as a practical engineer with 15 years' experience in electrical work, and two draftsmen; that on the date of the Dr. Gober article the appellee company had men connected with it who supervised the construction of light and power plants at Liberty, Robstown, Port Lavaca, Teague, and Smithville; that he did not know whether Engineer Allen was registered or not; and that building an electric plant and distribution system required considerable more civil and mechanical experience than electrical."

■ (4) It is unnecessary to consider the many fine distinctions in our jurisprudence in the construction of our libel law with reference to like or similar situations to this one; for the reason that the matter here declared upon as libelous is of a precise and definite character, was admittedly written and published as charged, hence need only be appraised from a legal standpoint as to whether it was libelous in such given circumstances; further, if, after giving due construction to the whole article under all the facts and circumstances, there was any such severable and distinct part of it as to have been libelous per se, if shown to have been false, the inquiry need proceed no further, since that alone—plus the other present facts—would support the venue as laid. 27 Tex.Jur. 602, 603, notes 17 and 18; 36 C.J. 1180; Scheidler v. Brochstein, Tex.Civ.App., 73 S.W.2d 907; Pennsylvania Iron Works Co. v. Vogt, 139 Ky. 497, 96 S.W. 551, 8 L.R.A.,N.S., 1023, 139 Am. St.Rep. 504; 36 C.J. 1186 and 1187; West Texas Co. v. Wills, Tex.Civ.App., 135 S.W. 2d 138.

■ (5) Whatever may be said of its other recitations, this court is of opinion that, plainly upon its face, these unequivocal declarations in paragraph 7 of the admitted article were, under the inescapable imputations, libelous, unless shown to be true, under such well-settled holdings in Texas as Belo & Co. v. Looney, 112 Tex. 160, 246 S. W. 777, to-wit: "I think they have made a most serious error in employing an engineering company to make the survey for, lay out, design and construct the distributing plant, when there is no person connected with the company who is a practical engineer, or who holds a degree of engineering. I am reliably informed that this company has never done any similar work, and by that I mean that it has never constructed such plant for any other city."

■■ (6) The proof, as cited above, was ample not only to raise an issue over whether or not these last-quoted declarations were facts, as therein asserted, but to have sustained a finding of court or jury to the effect that they were not; and that is all that is necessary, as this court understands the rule laid down in Compton v. Elliott, supra; that is, after all the necessary venue issues upon a plea of privilege hearing like this have been isolated and joined by. the designated pleadings, it will be sufficient if only these are proven by a preponderance of the evidence, like any other fact must be, and not prima facie only. 43 Tex.Jur., p. 857, and par. 114, note 14. Same volume, pp. 844, 845, par. 109, note 4; also notes 18 and 20, p. 844 of 1940 Supplement to 43 Tex.Jur.

■ (7) In this court's view, the very specifications of Article 5432, supra, defining what matters shall be deemed privileged and shall not be actionable as libelous, repel the claims of appellants that these last-quoted declarations were not so potentially libelous, in that they were neither "fair, true and impartial account[s]" of the proceedings, meetings, and doings with which they had to do, nor "reasonable and fair comment[s] or criticism[s] of official acts of public officials, and of other matters of public concern published for general information"; but they were direct charges against private individuals, that is, the appellee company, its officers and functionaries, to the plain purport that it and its personnel were wholly unfit for the contractual and "engineering services" it had assumed to the City of Temple, in that it did not have connected with it any person who was a practical engineer, or who held a degree of engineering, and that it had never constructed such a plant for any other city as it had so contracted to do as "engineer" for the City of Temple. Vernon's Texas Civil Statutes, Article 5432, sections 2, 3 and 4; Belo & Co. v. Looney, 112 Tex. 160, 246 S.W. page 784; Moore v. Leverett et al., Tex.Com.App.; 52 S.W. 2d 252, notes 8 and 11, page 255; Ferguson v. Houston Press, Tex.Civ.App., 1 S.W.2d 387, at page 393; affirmed, Tex.Com.App., at 12 S.W.2d 125; Galveston Tribune v. Johnson, Tex.Civ.App., 141 S.W. 302; Houston Press Co. v. Smith, Tex.Civ.App., 3 S.W.2d 900, at page 906.

(8) If, therefore, the evidence appellee offered was sufficient for and would have sustained a finding that these declarations were false, as it is here held to have been, a sufficient predicate was thereby laid for actionable libel, hence the venue was adequately sustained.

These conclusions require an affirmance of the judgment; it will be so ordered.

Affirmed.