BELL PUBLSHING COMPANY ET AL V. GARRETT ENGINEERING COMPANY.

No. 7935. Decided March 17, 1943.
Rehearing overruled April 21, 1943.
(170 S. W., 2d Series, 197.)

52

*Joe Everton, Walker Saulsbury, Bryon Skelton,* all of Temple, *Blalock, Lohman & Blalock* and *Clarence Lohman,* of Houston, representing the Bell Publishing Company, and *W. O. Cox* and *Will Brown,* both of Temple, for Dr. Gober, the petitioners.

The article complained of was conditionally privileged as to both the defendants and was published without malice and there could be no liability on the part of defendants and it was error for the Court of Civil Appeals not to so hold and in failing to reverse and render this cause for said defendants, petitioners here. Allen v. Earnest, 145 S. W. 1101; Cranfill v. Hayden, 97 Texas 544, 80 S. W. 609; Runge v. Franklin, 72 Texas 585, 10 S. W. 721.

*Howard, Reinhard & Schwing,* of Houston, *Sam O. Snodgrass,* of Temple, for respondents.

Since the published article was libelous per se, the only defense that was available to defendants was to prove the truth of the charges made, and failing in that they were not privileged to publish the aricle. Bradstreet Co. v. Gill, 9 S. W. 753; Davis v. Wells, 60 S. W. 566; Wichita Falls & So. Ry. Co. v. Pepper, 134 Texas 360, 135 S. W. (2d) 79; R. G. Dunn & Co. v. Shipp, 60 S. W. (2d) 502.

Mr. Judge Taylor delivered the opinion of the Commission of Appeals, Section B.

This is a libel suit. Plaintiff, Garrett Engineering Company, is a corporation. Defendants are Dr. O. F. Gober of Temple, who wrote and signed the article containing the alleged libel, and Bell Publishing Company, publisher of the Temple Daily Telegram, in which the article appeared.

The suit was filed in Harris Counity where plaintiff's main office is located. Defendants filed pleas of privilege to be sued in Bell County where Dr. Gober resides and where the publisher had its domicile. They were overruled and the trial court's action was upheld by the Galveston Court of Civil Appeals. 146 S. W. (2d) 301. Upon trial on the merits with the aid of a

jury plaintiff recovered judgment against both defendants for $15,000.00. The Court of Civil Appeals by unanimous decision reversed and remanded the case on its holding with respect to a procedural matter relating to the charge. 154 S. W. (2d) 885. Justice Graves dissented upon motion for rehearing, being of opinion upon further consideration that the trial court's judgment should be affirmed. 154 S. W. (2d) 887. Both the relator (plaintiff below) and the respondents (defendants below) filed applications for writ of error and both were granted.

For several years prior to May 21, 1939, when the alleged libel was published, the question whether the city of Temple needed a municipally owned electric light and power system had been widely discussed by the citizens, who took an active interest on both sides. The city commission had made several preliminary surveys and had carried on negotiations with various persons and concerns, including plaintiff, relating to such a project. On December 6, 1938, the city commissioners, on behalf of the city, entered into a contract with plaintiff company whereby, in consideration of a stipulated fee, it agreed to render to the city its services *as consulting and supervising engineer* in the event the city should either construct a municipal power plant, or purchase the existing privately owned system. Plaintiff obligated itself to prepare detailed preliminary plans and specifications together with large scale and full size drawings of buildings and equipment, furnished preliminary estimates of the cost, hold the necessary conferences with the city commission, supervise the work and employ and keep on the work from beginning to completion a resident electrical engineer who should remain thereon throughout the entire period of construction. Plaintiff then prepared and submitted to the city plans and estimates of cost of a complete light and power system, and on May 15, 1939, the city commission ordered an election to be held June 2nd, at which the qualified voters of the city would decide whether to authorize the issuance of revenue bonds (not payable by taxation) in an amount not exceeding $850,000.00 to finance the proposed project. In the campaign which followed M. T. Garrett, plaintiff's president, consulted and advised with the proponents of the bond issue, furnished campaign literature and contributed financial aid on the side of the proponents. It was during this campaign that Dr. Gober (who with others opposed a municipally owned plant) wrote and had published in the Temple Daily Telegram an article containing three statements which were complained of by plaintiff as hereinafter stated. The article is lengthy and is set out in full in the opinion of the Court of Civil Appeals, 146 S. W. (2d) 302, on defendant's pleas of privilege, cited above, which see. It is addressed to the home

owners and voters of Temple and is signed by Dr. Gober. Under his signature is a parenthetical statement that the article is an advertisement written and paid for personally by him. It contains a call for a public mass meeting "for the purpose of threshing * * * out and definitely determining whether or not Temple really needs this proposed utility." In the preface the article states that the tax payers of the city have theretofore been very liberal in voting bond issues to provide various public improvements, naming the improvements and the amounts expended therefor, and inquires when "this expenditure of public funds is going to stop." The preface closes with the statement that "it is about time the tax payers went on a sit-down strike." The body of the article sets forth nine reasons (numbered seriatim in nine paragraphs) why the writer is opposed to the proposed municipally owned plant, and concludes with the call for the mass meeting. The following statement summarizes the reasons except those stated in the seventh paragraph. This paragraph will be set out in full, since it contains the three statements complained of by plaintiff. The reasons set forth in the other paragraphs are as follows: 1) Puts too much government in business; 2) no real saving to users of electric energy; 3) constant change in city's governing body prevents operation according to fixed policies essential to successful operation; 4) would mean dismantling of existing plant and large loss to "many widows, orphans and other innocent people (who) have made investments"; 5) no one of the three commissioners voting for the project was experienced in constructing or operating a public utility; 6) because the contract of the city "with Garrett Engineering Company, of Houston," provided for payment to the company of the supervising fee ($39,525.00) "whether it supervises the construction of the plant" or whether the city purchases the existing plant; 8) charges the city commission with making a mistake in employing a non-resident firm of lawyers to handle the legal work in view of the fact that the city had a competent city attorney who was paid for that purpose; and 9) opposition to giving the "Board of Commissioners, or any other board," power to expend the large amount involved. The seventh paragraph in full is as follows:

"The members constituting the board of commissioners of Temple are my warm personal friends, but I think they have made a most serious error in employing an engineering company to make the survey for, lay out, design and construct the distributing plant, *when there is no person connected with the company who is a practical engineer, or who holds a degree of engineering. I am reliably informed that this company has never done any similar work,* and by that I mean that it has never con-

structed such plant for any other city." (All italics in this opinion ours).

The emphasized statements are the only statements of the article alleged by plaintiff to be libelous. It alleged that the statements were false, maliciously made, and damaging to the company's reputation, and that they injured it financially in that they led people to believe it did not possess the skill and technical knowledge and ability to properly perform its contract with the city, or to carry on its business of consulting and supervising engineer. It alleged also that the Temple Daily Telegram which published and widely circulated the article was a newspaper of general circulation in the State, having a large circulation in Bell, Williamson, Lampasas, Mills, Coryell, McLennan, Falls, Milam, Burleson, Travis and Harris counties.

Dr. Gober and the publishing company pleaded in support of their alleged defense of non-liability that the statements complained of were substantially true; and alternatively, in support of their claim of mitigation of damage that, if not true, they were made and published in an honest belief of their truthfulness. They pleaded also that the statements were priviledged as fair comment on a matter of public interest. Both defendants denied that any part of the article alleged to be libelous contained a fact statement and, in the alternative, that should it be held that any statement of fact was made, it was substantially true, and made without malice; that the article was absolutely privileged to the Bell. Publishing Company, and if not, was conditionally privileged as to both defendants. Dr. Gober, in addition to adopting the allegations of the publishing company, alleged that before writing the article he carefully investigated its subject matter, and formed a bona fide opinion that the statements and contents of the article were true; and the publisher pleaded in this connection that Dr. Gober presented for publication the article "fully prepared and signed by him"; that the editor (Mr. Walter Humphrey) to whom the article was presented inquired of Dr. Gober (an outstanding physician of unquestioned integrity and veracity) "whether its contents were true in every particular," and was assured by Dr. Gober that he "had checked and investigated the matters contained in the article" and that they were true.

By supplemental petition plaintiff, in addition to a general denial, alleged in reply specifically defendants' recklessness and lack of good faith for the following reasons:

"That said defendant failed to ascertain as could have reasonably and inescapably been done from the State Board of

Registration for Professional Engineers, or any other authentic source, that it was in fact a matter of public record that plaintiff had done similar work to and constructed such a light and power plant as was contemplated for the City of Temple, and furthermore that there was one or more persons connected with the plaintiff company who was a practical engineer or who held a degree of engineering on the exact date that the defamatory article was written and published by the defendant."

The three statements complained of by plaintiff are, briefly stated, 1) that there was no person connected with the company who was a practical engineer; or 2) who held a degree of engineering; and 3) that the company had never done any similar work (supervising construction), by which was meant "it has never constructed such a plant for any other city."

The jury answered substantially as follows the special issues submitted to it: (1) On May 21, 1939, plaintiff did have connected with it a practical engineer. (1-A) Plaintiff had connected with it a practical electrical engineer. (2) Prior to May 21, 1939, plaintiff had not constructed for any other city a plant similar to that contemplated by the city of Temple, in the sense of actually building or joining the materials together. (2-A) Plaintiff had, however, supervised as engineer the construction of such a plant. (3) Dr. Gober at the time of the publication of the article honestly believed its statements to be true. (4) Bell Publishing Company's editor and president, Mr. Walter Humphrey, likewise believed such statements to be true. (5) Plaintiff's damages amounted to $15,000.00. In addition to the jury's findings the trial judge found upon the undisputed evidence (and incorporated in the judgment his finding) that plaintiff on and before the publication of the article, "had connected with it persons who held a degree of engineering at all times material to this suit, * * *."

Based on the above findings judgment was rendered for plaintiff against both defendants for $15,000.00. On appeal a majority of the Court of Civil Appeals held the article to be libelous and unprivileged but reversed and remanded the cause for the trial court's failure to limit specially in his charge the damage to such as might have resulted from the statements found to be false. Justice Graves, in a dissenting opinion in which his reasons were stated, expressed the view that the judgment of the trial court should be affirmed. See 154 S. W. (2d) 885, 887. Both plaintiff and defendants were granted writs of error. Plaintiff seeks to have the judgment of the trial court affirmed, and

defendants contend that the judgments below should be set aside and that judgment should be here rendered in their favor.

■ We agree with the Court of Civil Appeals that the statements complained of are actionable, and libelous per se. Missouri Pac. Ry. Co. v. Richmond, 73 Texas 568, 11 S. W. 555; West Texas Utilities Co. v. Wills, (Tex. Civ. App.) 135 S. W. (2d) 138; Scheidler v. Brochstein (Tex. Civ. App.) 73 S. W. (2d) 907; 27 T. J. p. 602, sec. 10; 33 A. J. p. 80, sec. 63, and p. 83, sec. 77; Restatement of the Law (Torts), sec. 569 with comment, especially comment c.

The Richmond case turned on a question of privilege. As a basis for discussion of the privilege question, Chief Justice Stayton accepts (quoting "Townshend on Libel, 181") as a correct rule of the law of defamation, that language which concerns a person engaged in a lawful occupation "will be actionable if it affects him therein in a manner that may as a necessary consequence, or does as a natural or proximate consequence, prevent him from deriving therefrom that pecuniary reward which probably he might otherwise have obtained." The rule was not applied in the case because of the court's conclusion that the language involved was privileged and therefore not actionable.

Section 63 of American Jurisprudence, cited above under the heading dealing with "imputations affecting business, employment, occupation, office, or profession," makes the following statement of the law, citing, in a long list of cases, the Richmond case:

"It is well settled that false words which tend to prejudice the person spoken of in his business, profession, office, occupation, or employment are actionable without proof of special damage if they affect him in such business, profession, office, occupation, or employment, in a manner that may, as a necessary consequence, or does, as a natural consequence, prevent him from deriving therefrom that pecuniary reward which, probably, otherwise he might have obtained."

In section 66 the same authority, under the more specific heading "Impugning Capacity or Fitness" makes the following statement of the law ( based upon the same principle but more specifically applicable to the present case) :

"Words, whether oral or written, which injuriously affect the profession, business, or employment of another by imputing to him a want of capacity or fitness for engaging in the same are actionable per se, without proof of special damages, even though

such words do not defame the person in the ordinary sense, or impute to him blame, moral turpitude or even censure."

■ The law applicable in this case in determining whether the language complained of is libelous per se, and together therewith the rule with respect to damages, may be found in 27 Tex. Jur. (Libel and Slander) secs. 10, 53 and 58. The rule stated in the sections referred to and the cases cited in support thereof, which are applicable here, are well stated in the section and comment of the Restatement of the Law, supra, as follows:

"Sec. 569. The publication of any libel is actionable per se, that is irrespective of whether any special harm has been caused to the plaintiff's reputation or otherwise. Such a publication is itself an injury, and therefore a sufficient ground for recovery of at least nominal damages.

＊ ＊ ＊ ＊

"Comment c. Damages. Although actual harm to the reputation is not necessary to the actionable character of such defamation, the jury may take into consideration any loss of reputation sustained by the other in determining the amount of its verdict."

In keeping with the law as set out above we conclude that the statements complained of by plaintiff impute to it a lack of technical skill and practical experience on its part to perform its contract or to carry on its business and that such inescapable imputations tended to damage plaintiff's business and were actionable, unless privileged, or unless true; and that the amount of damages was a jury question. We overrule defendants' contention that they showed as a matter of law that plaintiff's reputation was bad and that therefore it suffered no damages. The evidence upon the subject of plaintiff's good or bad reputation was conflicting. Many witnesses for both sides testified upon this subject. The testimony that plaintiff's reputation was bad could not properly be urged as a complete bar to the cause of action but was proper to be considered by the jury in mitigation of damages.

■ We consider next the truth of the findings of the court and jury. The trial judge found in accord with the undisputed evidence that plaintiff "had connected with it persons who held a degree of engineering at all times material to this suit ＊ ＊ ＊." A careful consideration of the record discloses that there is no

evidence to the contrary and we therefore upheld the trial court's finding.

The jury found in response to the first special issue that plaintiff had connected with it a practical engineer. It was shown that M. T. Garrett, plaintiff's president, was licensed by the State Board to practice the profession of engineering (Art. 3271a, sec. 12, subd. c) ; and that while he was not licensed because of proficiency as an electrical engineer, he was a licensed engineer and had had much experience in connection with the planning and construction of water, gas and electric power systems in many Texas cities. J. Blair Stuart, plaintiff's vice-president, had held, as found by the trial court on undisputed evidence, a degree in mechanical engineering from Rice Institute since 1922 and the evidence is likewise undisputed that he had had engineering experience on the types of projects just referred to. There is evidence also that other registered engineers in plaintiff's employ were experienced in electrical engineering. The evidence supports the jury's finding and we overrule defendants' contention that there was no evidence to sustain it.

■ Defendants contend that notwithstanding the findings of the court and the jury, the evidence conclusively shows that the statements complained of were *substantially true*. This contention cannot be sustained. It could hardly be seriously urged in the light of the fact finding by the court on uncontradicted evidence that plaintiff had a graduate engineer connected with it, that it was substantially true that it did not.

Although the article charged that plaintiff had no one connected with it who was a practical engineer, the jury found that plaintiff had both a practical engineer and a practical electrical engineer. Defendants contend in this connection that such findings were not in reality findings upon the issues, because the term "practical engineer" has no legal meaning in view of the law's requirement that every person desiring to practice engineering be registered with the State Board of Registration for Professional Engineers as a professional engineer showing proficiency in some particular branch of engineering. Art. 3721a, sec. 12, subd. c. This proposition is not tenable. The law requires as a prerequisite to registration that the person make a showing to the board, as appears from the article cited, either that he is a graduate engineer or that he meets the requirements prescribed with respect to experience. The trial court in its charge defined "practical" to mean "trained by or derived from experience or practice; hence, skilled in the ap-

plication of means in attaining particular ends,—experienced." Dr. Gober himself testified that by "practical" he meant experienced, which is the sense in which the ordinary reader would probably understand it. The word "practical" is not a technical legal term and it was not necessary to define it; but the question here is whether the statement with reference to a practical engineer was false in the sense the ordinary reader would interpret it. The finding that plaintiff had a practical engineer connected with it was a finding of fact with respect to that question. We take occasion to say that while the trial court submitted, in addition to a special issue (1) inquiring whether plaintiff had a practical engineer, he submitted also a supplemental issue (1-A) inquiring whether plaintiff had a practical *electrical* engineer; and that while there was evidence to support the jury's affirmative finding on the supplemental issue, it should not have been submitted. The article does not state, either in terms or by implication, that plaintiff did not have a practical *electrical* engineer connected with it, and plaintiff complains of no such statement as a libel against it. Furthermore, the supplemental issue (1-A) was purely evidentiary upon the question inquired about in issue (1).

We overrule the contention that the two statements complained of, just discussed, were shown as a matter of law to be substantially true. The jury's finding on the third statement (with respect to plaintiff's not having constructed a similar plant) will be later considered in connection with the question upon which the majority of the Court of Civil Appeals reversed and remanded the case.

■ The questions next to be considered are whether the statements complained of were either absolutely privileged, or qualifiedly privileged. Defendants rely in support of their contention that the article was absolutely privileged, on the following provision of Article 5432 of the revised civil statutes:

"The publication of the following matters by any newspaper or periodical shall be deemed privileged and shall not be made the basis of any action for libel.

    ✳      ✳      ✳      ✳

"4. A reasonable and fair comment or criticism of the official acts of public officials and of other matters of public concern published for general information."

Assuming, without deciding, that the company's fitness and qualifications to carry on its business of supervising construc-

tion of the project in question and perform its contract to do so was a matter of public concern under the facts of this case, the defense of absolute privilege based upon the section of the statute invoked cannot be sustained, among other reasons, because the privilege granted by this section extends only to "reasonable and fair comment or criticism," and not to false words which tend to injure the person spoken of in his business. Although the authorities are not unanimous, it is the law of most jurisdictions, and is the settled law of Texas, that a false statement of fact concerning a public officer, even if made in a discussion of matters of public concern, is not privileged as fair comment. Moore v. Leverett (Com. App.), 52 S. W. (2d) 252; A. H. Belo & Co. v. Looney, 112 Texas 160, 246 S. W. 777; Ferguson v. Houston Press Co. (Civ. App.), 1 S. W. (2d) 387, affirmed (Com. App.), 12 S. W. (2d) 125; Galveston Tribune v. Johnson (Civ. App.), 141 S. W. 302 (writ refused); 33 Am. Jur. 164; 110 A. L. R. 412 (annotation); 27 Tex. Jur. 670. The rule stated in the A. L. R. annotation is as follows:

"In the majority of jurisdictions the rule that *fair comment on and criticism of* the acts and conduct of a public officer or candidate for public office are, in the absence of malice, privileged, *does not apply to a false seatement of fact*. In these jurisdictions, a defamatory statement of fact concerning one in public life, or who is a candidate for office, if false, is as actionable as would be such a statement concerning one in private life."

The long list of Texas cases cited is headed by Belo & Co. v. Looney as the leading case. While the rule is stated as applied to a public officer or candidate for office, it is for reasons always equally as strong, and in some instances stronger, aplicable to a person who is neither a public official nor a candidate. Certainly plaintiff did not, by merely contracting to become an employee of the city, submit its reputation to public scrutiny to any greater degree than does a public official or candidate. We hold that the article was not absolutely privileged.

■ Defendants contend that independently of the statute the statements complained of are conditionally or qualifiedly priviledged, and insist that no recovery can be had against them in view of the jury's findings that the statements complained of were made in good faith with an honest belief that their truthfulness, relying on those cases which hold that a communication is conditionally priviledged if made in the discharge of a legal moral, or social duty, or for the protection of an interest, *to one who has a corresponding duty or interest to receive such com-*

*munication.* International & G. N. Ry. Co. v. Edmundson (Com. App.), 222 S. W. 181; Missouri P. Ry. Co. v. Richmond, 73 Texas 568, 11 S. W. 555, 4 L. R. A. 280, 15 Am. St. Rep. 794; Cranfill v. Hayden, 79 Texas 544, 80 S. W. 609. In such cases the defendant is excused if he was not actuated by malice and believed the statements to be true. A different question from that before us would be presented if Dr. Gober had made the statements to the city commissioners only. We express no opinion upon such question. In the present case the statements were published in a newspaper of general circulation in approximately a hundred counties, including the county of plaintiff's domicile. Under such circumstances defamatory statements are far more destructive of a person's reputation than the same statements made to a few persons directly interested. In line with this view, the weight of authority is that defamatory misstatements concerning public officers or candidates for office, published in newspapers or periodicals of general circulation, are not protected by the *ordinary conditional privilege,* and, whether made maliciously or not, are actionable unless they come within the bounds of fair comment. The reasons for the rule are clearly expressed by Taft, J., in the leading case of Post Publishing Co. v. Hallam (6th C. C. A.) 59 Fed. 530, 539:

"The privilege should always cease where the sacrifice of the individual right becomes so great that the public good to be derived from it is outweighed. * * * This is the extent of the sacrifice which the rule compels the servant to suffer in what was thought to be, when the rule became law, a most important interest of society. But if the privilege is to extend to cases like that at bar, then a man who offers himself as a candidate must submit uncomplainingly to the loss of his reputation, not with a single person or a small class of persons, but with every member of the public, whenever an untrue charge of disgraceful conduct is made against him, if only his accuser honestly believes the charge upon reasonable ground. We think that not only is such a sacrifice not required of everyone who consents to become a candidate for office, but that to sanction such a doctrine would do the public more harm than good."

To the same effect is Burt v. Advertiser Newspaper Co., 154 Mass. 238, 28 N. E. 1, 13 L. R. A. 97, Judge Holmes speaking for the Court. Express Printing Co. v. Copeland, 64 Texas 354, apparently extended the conditional privilege to protect a defamatory misstatement of fact concerning a candidate for office, but the cases decided since the enactment of our libel statutes have followed the majority rule. Moore v. Leverett, Belo & Co.

v. Looney, Ferguson v. Houston Press Co., affirmed (Com. App.), and Galveston Tribune v. Johnson, 141 S. W. 302 (writ refused), all supra. These cases are authority for the rule that a misstatement of fact published in a newspaper of general circulation is not excused by absence of malice on the part of the publisher, even though made concerning the qualifications or character of a public official or candidate for public office, as well as for the proposition upon which they were cited above that a misstatement of facts is not within the privilege of fair comment provided in section 4 of Article 5432, supra. We overrule the contention of defendants that the alleged libelous statements are qualifiedly or conditionally privileged.

■ Defendants interposed as a defense that plaintiff company was acting beyond its corporate powers under its purpose clause in practicing the profession of consulting and supervising engineer and in entering into the contract with the city, and that damages to its reputation in an unauthorized business cannot be made the basis of a libel suit. Plaintiff's business, however, was not unauthorized. See the purpose clause (art. 1302, sec. 45), which is identical with the purpose clause of plaintiff company. It was held by this court in Stephens County v. J. N. McCammon, Inc., (Com. App.), 122 Texas 148, 52 S. W. (2d) 53, that an architectural company operating under the same purpose clause as is here in question was not acting ultra vires in entering into a contract to supervise the construction of a courthouse and jail. The fact that one of plaintiff company's officers in his testimony gave the purpose clause a more restricted interpretation by saying the company was no longer engaged in the business authorized by its charter, did not alter the law of the case. We hold plaintiff's contract with the city was not ultra vires so as to bar a recovery by plaintiff.

We consider finally the point on which the Court of Civil Appeals reversed and remanded the cause. The third statement of the article was substantially that plaintiff company had not theretofore "constructed" for any other city a plant similar to the plant then in contemplation. The trial court, under the view of the word "construct" as used in the article was ambiguous, submitted in connection therewith two special issues; issue No. (2) inquiring whether prior to May 21, 1939, plaintiff had "constructed" for any other city a plant similar to that contemplated being built in Temple, and No. (2-A) inquiring whether plaintiff prior to that time had "supervised as engineer" the construction of a similar plant. The jury found in answer to issue (2), in connection with the trial court's definitions of

"construct" and "similar," that plaintiff had not theretofore constructed a similar plant in the sense of actually building it by joining together the materials; and in answer to issue 2-A, plaintiff had theretofore "supervised construction" of a similar plant. The trial court proceeded upon the theory in rendering judgment that the third statement complained of was properly found to be false.

■ We agree with the Court of Civil Appeals that where some of the defamatory charges in a publication are found to be true and others false, the jury should be instructed to consider only such damages as resulted from the false, since under article 5431 of the Revised Civil Statutes the truth of the alleged libel is a complete defense. Times Pub. Co. v. Ray (Civ. App.), 1 S. W. (2d) 471, affirmed, (Com. App.), 12 S. W. (2d) 165. Failure of the trial court in the present case to so restrict his charge as to permit the jury in its consideration of damages to consider only such as resulted from the statements found to be false, is the ground upon which the Court of Civil Appeals reversed and remanded the case.

Defendants contend that "construct" as used in paragraph 7 of the article should be given its meaning as defined by the trial court in connection with issue No. 2, and that the jury's answer to such issue to the effect that plaintiff had never actually performed the physical labor in the construction of any similar plant amounts to a finding that the statement was true. Plaintiff argues that the article as a whole shows that the word "construct" meant to supervise the actual physical work of building the plant.

It will be observed that the third statement (part of paragraph 7) complained of uses words to the effect that plaintiff had not "constructed" for any other city a plant similar to the plant in contemplation. In the preceding paragraph (see reason No. 6 supra) Dr. Gober stated that under the contract with the city plaintiff would be paid the fee agreed upon, "whether it 'supervises the construction' of the plant, or if the city should purchase the existing plant." Then follows his criticism of the city commissioners for employing a company that had "never done any similar work," meaning, as defined by him in the statement itself, that the company "had never constructed such a plant."

The opposing contentions of plaintiff and defendants are persuasive that the word "construct" as used in the third state-

ments, is ambiguous. The trial judge evidently took this view, since he submitted issues to the jury using both meanings. The judges of the Court of Civil Appeals were divided on the meaning, the majority adopting defendants' construction, and the dissenter agreeing with plaintiff. We cannot say which interpretation is correct, since the language must be taken as understood by the average person. What meaning an ordinary reader would get from the article is a question of fact, where such a meaning is in dispute. Moore v. Leverett, 52 S. W. (2d) 252, par. 9, and cases there cited.

We have no way of knowing how the jury interpreted the word "construct," as used in the statement in question. They probably gave the word its literal meaning, as do defendants and the majority of the Court of Civil Appeals. If so, it is possible that in assessing plaintiff's damages the jury considered the effect on plaintiff's reputation of that part of the article which they found to be true. Under such circumstances, the judgment of the Court of Civil Appeals remanding the case for a new trial must be affirmed.

In view of another trial, we think it proper to state that the trial court adopted an erroneous method of submitting the case to the jury. The court should have taken each of the three statements complained of and inquired of the jury whether the statement, as understood by the average person, was true or false. Instead, the court asked the jury what the facts were concerning plaintiff and then undertook to say himself that the statements were false, or true, in the light of the facts so found. The issues submitted were not the ultimate issues, but merely evidentiary. This method of submission may reach the same result where the language of the alleged libel is clear and unambiguous, but where its meaning is in doubt (as in this case with respect to statements 1 and 3, supra), the ultimate issue—the truth or falsity of the defamatory charge—is left undecided by the jury. Furthermore, the court in its charge gave the jury definitions of the words used in the article, such as the ambiguous (as used) terms, "practical," "engineer," "construct," and "similar." These words as used in the article in question are not legal terms, and, since they were ambiguous, the meaning they conveyed to the mind of an ordinary reader was a question for the jury to determine.

The Court in the present case could not have aided the jury by undertaking to define them.

The judgment of the Court of Civil Appeals is affirmed.

Adopted by the Supreme Court March 17, 1943.

Rehearing overruled April 21, 1943.

Judge Brewster not sitting.